Craig S. SINGER and Nickels and Dimes, Inc., Plaintiffs,

v.

LEXINGTON INSURANCE COMPANY, Defendant.

Civ. A. No. CA 3–85–0050–G.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 4, 1986.

Ira E. Tobolowsky, Dallas, Tex., Michael M. Cahan, Cahan, Braun & Associates, Stephen Novack & Donald A. Tarkington, Novack & Massey, Chicago, Ill., for plaintiffs.

Franklin Perry, Rhonda Johnson & Allison Moore, Thompson, Coe, Cousins, Cousins & Irons, Dallas, Tex., for defendant.

## MEMORANDUM ORDER

FISH, District Judge.

Plaintiffs Craig S. Singer and Nickels and Dimes, Inc. seek compensatory and punitive damages from defendant Lexington Insurance Company ("Lexington") in this action for wrongful cancellation of insurance coverage, wrongful refusal to pay a policy claim, and conspiracy to deprive plaintiffs of both insurance coverage and timely payment of legitimate claims. Because jurisdiction rests on diversity of citizenship, state law provides the rule of decision for all of plaintiffs' claims. The parties differ, however, on which state's law applies. Plaintiffs urge the application of Massachusetts law, while Lexington argues for the law of Texas. The court agrees with plaintiffs that Massachusetts law applies.

### I. *Factual Background*

In March, 1984, plaintiffs contacted Kiki Ward Platt, Inc. ("Platt"), an insurance broker located in Phoenix, Arizona for the purpose of obtaining insurance coverage for several thoroughbred horses. Platt, in turn, submitted the risk to Hall, Ropner Ltd. ("Hall"), an insurance broker located in London, England. Hall placed the insurance with Lexington. Lexington agreed to insure the horses and issued to plaintiffs the insurance policy at issue here. All of plaintiffs' dealings with respect to the policy were conducted with Platt in Arizona. Neither plaintiffs nor Platt ever dealt directly with Lexington or any of its representatives in Texas.

The policy was made and accepted by Lexington in Boston, Massachusetts. The policy provided that it was not valid unless and until it was accepted by an authorized representative of Lexington. Specifically, the policy stated that:

"[It] shall not be valid unless countersigned by a duly authorized representative of [Lexington]."

The policy was countersigned and validated by Edward Cronin, as authorized representative for Lexington, in Boston, Massachusetts on April 26, 1984.

At the time of its acceptance by Lexington, the policy covered fifty-three thoroughbred horses as identified on two schedules. Prior to the purported cancellation of the policy, numerous horses were added and deleted from the coverage. Each change was reflected in an endorsement to the policy. The horses identified in Schedules I and II and in the endorsements thereto were, at all relevant times, located throughout the continental United States, Canada, and Western Europe (including Ireland and England).

### II. *Analysis*

A federal court sitting in diversity must apply the choice of law rules of the forum state, in this case Texas. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

Under Texas law, in the absence of a contrary manifestation, an initial presumption is that the parties intend for the law of the jurisdiction where the contract is made to govern. However, where the contract is made in one jurisdiction, but to be performed in another, the presumption arises that the parties contracted with reference to the place of performance. *New York Life Insurance Company v. Baum*, 700 F.2d 928, 931 (5th Cir.1983).

Where a contract is made in one state but is to be performed partly in the state of making and partly in another state, the courts have ordinarily construed the contract in accordance with the law of the place where the contract was made. *Grace v. Orkin Exterminating Co.*, 255 S.W.2d

279, 294 (Tex.Civ.App.—Beaumont 1953, writ ref'd n.r.e.); *Ramirez v. Autobuses Blancos Flecha Roja, S.A. de C.V.*, 486 F.2d 493, 496 (5th Cir.1973). Texas courts have also held, however, that incidental performance in one state would not preclude the application of the law of the state where the bulk of performance occurred, and in which the contract itself was made.

Analysis of Texas cases involving insurance contracts yields a number of rules upon which courts rely in determining the place of the making of the contract and the place of its performance. In *Seiders v. Merchants Life Ass'n of the United States*, 93 Tex. 194, 54 S.W. 753 (1900), the Supreme Court of Texas held that where the insurance contract provided that the proceeds and premiums were to be payable at the insurance company's home office in Missouri, Missouri law controlled construction of the contract in the absence of any special circumstances, even though the contract was actually made in Texas:

> Conceding that the contract of insurance was made in Texas, it is made payable at the home office, in the state of Missouri, and all premiums are likewise made payable there. It does not provide for any act to be done elsewhere by the company. A tender of the money at the home office would have been valid. Unless there be something in the circumstances which indicate that the parties contracted with reference to the laws of Texas, the legal effect of the contract must be determined according to the laws of the state of Missouri.

54 S.W. at 754.

■ Applying these Texas choice of law principles to the facts of this case, it is clear that Massachusetts substantive law controls the interpretation of the policy. First, the policy was made and accepted in Massachusetts. By its own terms, the policy was not valid unless and until it was countersigned by a duly authorized representative of Lexington and, as is clearly shown on the face of the policy, it was countersigned in Boston, Massachusetts. The final act necessary to complete the contract, its acceptance, took place in Mas-

sachusetts. The substantive law of Massachusetts controls the interpretation of the this policy. *Lipschutz v. Gordon Jewelry Corporation*, 373 F.Supp. 375, 384–85 (S.D. Tex.1974).

Furthermore, paragraph 22 of the policy demonstrates that the parties intended Massachusetts law to control. Paragraph 22 provides that the:

> "Terms of this policy which are in conflict with the statutes of the State wherein this policy is *issued are hereby amended to conform to such statutes*" (emphasis added).

The above provision manifests the parties' desire to enter into a policy which conforms to the law of the state in which it was issued. A provision which endeavors to conform the policy to the law of the state of issue makes sense only if the parties intended the policy to be governed by the same law.

Contrary to Lexington's contentions, Article 21.42 of the Texas Insurance Code (Vernon 1981) is inapplicable in this case and does not require this court to apply Texas substantive law. *See Howell v. American Livestock Insurance Company*, 483 F.2d 1354, 1359 (5th Cir.1973); *Austin Building Company v. National Union Fire Insurance Company*, 432 S.W.2d 697 (Tex. 1968).

Article 21.42 of the Texas Insurance Code provides, in pertinent part, that:

> "Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same."

Article 21.42 is designed "to assure that Texas law will apply to contracts made between Texas citizens and insurance companies doing business in Texas, *when, and*

*only when* those contracts are made in the course of the company's Texas business." *Howell,* 483 F.2d at 1359 (emphasis in original); *see also Austin Building,* 432 S.W.2d at 701. Even if an insured is a citizen or resident of the State of Texas and the foreign insurer does other business in the state, Art. 21.42 does not apply if the policy at issue was not made in the course of the insurer's Texas business. *Id.*

Even assuming that Lexington is "doing business" within the State of Texas, Art. 21.42 does not apply because this policy was not made in the course of Lexington's Texas business. *See Howell,* 483 F.2d at 1361; *Austin Building,* 432 S.W.2d at 701. All of plaintiffs' dealings with respect to the policy were conducted with Platt, an Arizona broker which placed the insurance with Lexington in Massachusetts through Hall, a London broker. At no time did plaintiffs or Platt deal directly with Lexington or its representatives within Texas or anywhere else. Accordingly, Art. 21.42 does not apply.

■ Plaintiffs argue for application of Massachusetts law because Massachusetts recognizes an implied covenant of good faith and fair dealing in contracts. *See Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251, 1256 (1977); *Druker v. Roland William Jutras Associates, Inc.,* 370 Mass. 383, 348 N.E.2d 763, 765 (1976). Lexington notes that Texas does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in contracts, including insurance contracts. It is a well-recognized principle in conflict of laws jurisprudence that a state will not enforce a foreign principle of law if to do so would contravene the public policy of the forum state. Lexington argues that even if Massachusetts law applies, the implied duty of good faith and fair dealing is inapplicable because it violates Texas public policy, since the Texas Supreme Court has refused to recognize a duty of good faith in contracts. Lexington's argument is unconvincing. A foreign principle of law does not violate the public policy of the forum state simply because the courts of the forum state have refused

to recognize or adopt the same principle of law. Even though Texas law does not recognize a duty of good faith and fair dealing, it does not contravene Texas public policy for a Texas court to enforce such a duty if it is found to be applicable under the law of the case.

■ In support of its argument that Texas law applies to this controversy, Lexington points to paragraph 11 of the policy in question which provides as follows:

It is agreed that in the event of a failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Insured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined *in accordance with the law and practice of such Court* (emphasis added).

Lexington contends that the above section provides that the substantive law of the forum, in this case Texas law, should apply to this controversy. The court is not persuaded that paragraph 11 is a choice of law provision. By its plain language, the section is a consent to the jurisdiction of any court of plaintiffs' choice. The reference to the "law and practice of such Court" includes, of course, the choice of law principles applicable in the forum court. Paragraph 11 allows plaintiffs to choose the forum of their choice. That forum must then determine the applicable substantive law in accordance with relevant choice of law principles and "the law and practice of such Court." If paragraph 11 were intended to provide for the application of the substantive law of the forum, it could certainly have more clearly said so. At most, paragraph 11 is ambiguous; and in keeping with the elementary principle that ambiguity in insurance contracts must be construed against the insurer, the court cannot accept Lexington's contention that paragraph 11 provides for the application of Texas law to this controversy.

## Conclusion

After review of the briefs and exhibits, the court is persuaded that Massachusetts law controls the determination of the rights and duties created by this insurance policy. The Northeastern Reporter and the Northeastern Reporter 2d are not part of the court's library. Accordingly, the parties must supply the court copies of any Massachusetts cases they rely upon in motions or jury instructions. Otherwise, the cases will not be considered.

SO ORDERED.