## W.R. GRACE & CO. *vs.* HARTFORD ACCIDENT & INDEMNITY COMPANY & others.[1]

Middlesex. January 11, 1990. - June 11, 1990.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, O'CONNOR & GREANEY, JJ.

*Insurance*, Comprehensive liability insurance. *Conflict of Laws. Practice, Civil*, Parties, Judicial discretion. *Jurisdiction*, Forum non conveniens.

Discussion of general principles governing the doctrine of forum non conveniens. [577-579]

A "service of suit" clause appearing in an excess comprehensive general liability insurance policy did not require an insurer to accept a particular jurisdiction chosen by the insured as the forum in which the issues raised in the insured's complaint must be decided, nor did such a clause bar a court in that jurisdiction from considering a plea of forum non conveniens. [579-582] O'CONNOR, J., dissenting.

In a declaratory judgment action against insurers from whom an insured had purchased excess comprehensive general liability insurance and in which, in light of similar actions pending in a Federal District Court in New York, several excess insurers moved for dismissal on the ground of forum non conveniens, any error by the motion judge in dismissing the action based in part on his conclusion that the plaintiff could add all the excess insurers as parties in either of the Federal court actions, did not affect his discretionary decision, where he concluded that, even if neither Federal action existed, he would still dismiss the action on forum non conveniens grounds. [582-583]

In a declaratory judgment action against insurers from whom an insured had purchased excess comprehensive general liability insurance, the judge, in light of similar actions pending in a Federal District Court in

---

[1]There are sixty-seven defendant insurance companies, most of whom have taken no position here or in the trial court on the issues in this appeal. The companies that have taken an active role on appeal are Hartford Accident & Indemnity Company, First State Insurance Company, and Twin City Fire Insurance Company; The Aetna Casualty and Surety Company; Insurance Company of North America, California Union Insurance Company, and Century Indemnity Company; Rayment and London Market Companies; Royal Indemnity Company; and Maryland Casualty Company.

New York, did not abuse his discretion in allowing the defendants' motions to dismiss on forum non conveniens grounds where, upon considering the relevant private and public factors, he reached a reasoned determination, not based on any error of law, that New York rather than Massachusetts was the appropriate forum in which to resolve the insurance coverage issues dividing the parties. [583-586] O'CONNOR, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department on May 26, 1987.

The case was heard by *James J. Nixon*, J., on motions to dismiss.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John J. Curtin, Jr.* (*Randy Paar* of New York & *David C. Boch* with him) for the plaintiff.

*William J. Bowman* of the District of Columbia (*William J. Dailey* with him) for Hartford Accident & Indemnity Company & others.

*Laura A. Foggan* of the District of Columbia, for Maryland Casualty Company.

*James P. Donovan* & *Carl J. Pernicone* of New York, for Royal Indemnity Company, joined in a brief.

*Mary Ann D'Amato* & *Thomas J. Quinn* of New York, *George Marshall Moriarty, John T. Montgomery,* & *Eric A. Smith* for Rayment and London Market Companies, submitted a brief.

*John H. Harwood, II, Karen E. Schifter, L. Anthony Sutin* & *James G. Christiansen* of the District of Columbia, & *David B. Chaffin* & *John P. Ryan* for Insurance Company of North America & others, joined in a brief.

WILKINS, J. W.R. Grace & Co. (Grace), a Connecticut corporation with its principal place of business in New York City, commenced this declaratory judgment action in 1987 against insurers from whom Grace had purchased excess comprehensive general liability insurance, in various amounts and at various times, between October 20, 1962, and June 30, 1984. Grace asserts that the defendants are obliged to

defend Grace and, if liability is established, to indemnify it as to numerous claims for personal injury and property damage alleged to have been caused by products containing asbestos that were manufactured by Grace. Since 1983, a declaratory judgment action brought by the Maryland Casualty Company against Grace has been pending in the United States District Court for the Southern District of New York. All Grace's primary comprehensive general liability insurers during relevant periods are parties to that action, which concerns the primary insurers' duties to defend and to indemnify Grace with respect to asbestos-related claims.[2]

Several excess insurers moved for dismissal of this action on the ground of forum non conveniens.[3] In a comprehensive memorandum of decision, supplemented by a further memorandum following Grace's motion for reconsideration, the judge allowed the motion to dismiss on forum non conveniens grounds. A judgment dismissing the action was entered. We transferred Grace's appeal here on our own motion.

We shall first discuss the facts and legal conclusions on which the judge based his decision to deny Grace access to the courts of this Commonwealth to litigate its dispute with its excess comprehensive general liability insurers. At certain points, we shall pause to assess Grace's objections to the judge's reliance on certain facts. No party claims that the

---

[2]We do not know what the issues are in the primary insurers' action in New York. It appears that many issues are presented there that the excess insurers have asserted or will assert against Grace in this action. An aspect of the New York action is discussed in *Maryland Casualty Co.* v. *W.R. Grace & Co.*, 726 F. Supp. 62 (S.D.N.Y. 1989).

[3]Most insurers have not sought dismissal of the action and have taken no position on the forum non conveniens issue, although they were given the opportunity to join in the motions. Two Massachusetts based insurers, not involved in this appeal, argued below that the motions should be denied.

Certain insurers also argued for dismissal of the action on the ground that, under the Commonwealth's declaratory judgment act (G. L. c. 231A [1988 ed.]), the failure of Grace to add all the underlying claimants (of which there are thousands), deprived the court of jurisdiction. The judge rejected this claim. We need not consider it because we sustain the dismissal on forum non conveniens grounds.

underlying issues in this case should not be resolved in a single proceeding.[4] The conflict is between Grace's claim that its choice of Massachusetts as the decision-making forum must be accepted and the defendant excess insurers' claim that Massachusetts is an inappropriate forum, particularly because New York is the logical State in which to resolve the dispute over the obligations of Grace's excess insurance carriers.

Grace has numerous divisions located in various States, one of which is its construction products division whose principal place of business is in Cambridge. More than 2,000 of the over 7,500 underlying claims against Grace have been asserted in Massachusetts courts. These actions are being defended by two Boston law firms. Most of these claims are based on conduct of Grace's construction products division.[5]

The judge found that the insurance contracts involved in this case were negotiated, executed, and delivered to Grace in New York. Marsh & McLennan, a New York-based insurance broker, acted for Grace in New York in obtaining insurance coverage from various excess insurers whose offices were in New York. Over 460 insurance policies are involved in this case. There is support in the record for the conclusion that Marsh & McLennan negotiated some policies outside of New York. From supplemental material that Grace presented with its motion to reconsider, it appears that, as to one insurer, the negotiations for coverage and the issuance of policies occurred in Boston and as to a few others the negotiations also occurred outside of New York. Grace generally

---

[4]See *United Technologies Corp.* v. *Liberty Mut. Ins. Co., post* 591 (1990), decided today, in which the contested issue is whether coverage disputes between an insured and its insurers should be decided in a single forum or in a multitude of jurisdictions.

[5]Grace has offices in several Massachusetts municipalities and conducts operations in eight cities and towns. Grace employs approximately 2,400 people in this State, of whom about 450 work for the construction products division. In 1986, Grace had Massachusetts sales of over $100,000,000, which is about 2% of its annual revenues. The significant issue here is not the extent of Grace's association with Massachusetts in all its operations. The judge rightly did not focus on these connections.

paid premiums to insurers in New York. Grace's supplemental material pointed to a few exceptions. Most of the excess insurers do business in Massachusetts; all do business in New York. Grace claims that the record shows that all defendants do business here. Certainly all the defendants who moved to dismiss do business in Massachusetts.

Many insurers have denied responsibility in this case on the theory that Grace knew of asbestos-related risks but failed to inform the excess insurers of those risks during negotiations for coverage. The motion judge believed that the misrepresentation issue would be a major one for the trier of fact in this case.[6] He also found that few witnesses live in Massachusetts and that a vast majority of the people who participated in the negotiations resided or still reside in New York. Grace points out that some potential witnesses are scattered around the country. On the other hand, the motion judge noted that many nonparty witnesses would not be amenable to process in Massachusetts (and would be in New York) and that the relevant insurance policies and other documents would likely be located in New York.

In addition to the private factors just discussed bearing on the forum non conveniens issue, the judge considered public interest factors. He recognized that this complex case would impose a burden on the judicial system of the Commonwealth but rightly did not rely on this circumstance alone in reaching his decision. He concluded that the substantive law of New York would govern the obligations of the insurance companies.[7] Citing *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501,

---

[6]In their brief here, certain defendants say that the key issue is how fully Grace conveyed its knowledge of the danger of asbestos and the potential for asbestos claims.

[7]The judge stated that, because "the policies were executed in New York, a Massachusetts court would have to apply New York substantive law" to decide issues concerning the insurance policies. He cited, however, opinions of this court that recognize that no one factor would control the choice of law issue, if it were raised in this State. See *Bushkin Assocs.* v. *Raytheon Co.*, 393 Mass. 622, 631-635 (1985); *Choate, Hall & Stewart* v. *SCA Servs., Inc.*, 378 Mass. 535, 541 (1979). He did not cite New York State court opinions on the choice of law question.

509 (1947), he said that, because New York law governed, it was preferable that a New York, rather than a Massachusetts, court decide the dispute. He believed that this action duplicated the actions in New York. He said that "Grace seems to be forum shopping in an effort to reach a favorable result." If the issues were decided in one forum, he concluded, duplication of effort and inconsistent judgments would be avoided.[8]

The judge declined to give effect to "service of suit" clauses that appear in many, if not all, excess coverage policies. Grace claims that those clauses (a) compel its insurers to accept Massachusetts as the forum for the resolution of their dispute and (b) direct that the substantive law of the selected forum must govern the resolution of the contested issues. We shall return to the issue of the "service of suit" clauses after we have discussed general principles that govern the doctrine of forum non conveniens.

A decision whether to dismiss an action under the doctrine of forum non conveniens involves the discretion of the motion judge, cannot be made by applying a universal formula, and depends greatly on the specific facts of the proceeding before the court. *Universal Adjustment Corp.* v. *Midland Bank, Ltd.*, 281 Mass. 303, 316 (1933). In *New Amsterdam Casualty Co.* v. *Estes*, 353 Mass. 90, 98-99 (1967), we upheld the discretionary dismissal of an action in which (a) the controversy was governed by the law of another State, (b) sources of proof were relatively inaccessible here (nonparty witnesses

---

[8]Two days before the hearing on the motion to dismiss, Maryland Casualty Company, which had commenced the 1983 action concerning primary insurers' obligations, commenced a second action in the United States District Court for the Southern District of New York, seeking a declaration concerning its duties as an excess insurer to defend and indemnify Grace. Just less than one-half of Grace's other excess insurers (the judge said it was a majority) are parties to that action.

The judge stated, however, that, even if these New York actions did not exist, he would dismiss this action on forum non conveniens grounds. He also concluded that Grace could add all its excess insurers to one of the other New York actions by a compulsory counterclaim, a point to which we shall return.

and documents in the possession of nonparties), and (c) if the evidence could have been produced here, it would have been only at great expense and inconvenience. We quoted extensively from *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508-509 (1947), where the United States Supreme Court recited factors to be considered, while conceding that the weight to be given to those factors in each case was not easily stated. *New Amsterdam Casualty Co.* v. *Estes, supra* at 95-96. Among the private factors, relevant to the case before us, are the practical problems that do or do not make a trial easy, expeditious, and inexpensive, such as the ease of access to proof, the availability of compulsory process, and the cost of attendance of witnesses. *Id.* at 95. Factors of public interest include administrative burdens caused by litigation that has its origins elsewhere and the desirability of the trial of a case in a forum that is at home with the governing law. *Id.* at 95-96.[9] "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* at 95 (quoting *Gulf Oil Corp.,* 330 U.S. at 508). See *Kearsarge Metallurgical Corp.* v. *Peerless Ins. Co.,* 383 Mass. 162, 169 (1981) (no abuse of discretion in declining to dismiss an action governed by the substantive law of New Hampshire); *Joly* v. *Albert Larocque Lumber Ltd.,* 397 Mass. 43, 44-45 (1986) (no abuse of discretion in allowing motion to dismiss where all parties were Canadian, access to witnesses and discovery was more favorable in Canada, Canadian law seemed applicable, and other factors pointed toward Canada); Restatement (Second) of Conflict of Laws § 84 comment c (1971).

---

[9]The Massachusetts statutory rule of forum non conveniens recites the broad standard of "the interest of substantial justice." G. L. c. 223A, § 5 (1988 ed.). "When the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just." The implication is that there should be another forum available. Note that the statute recognizes the possibility of only a partial dismissal of an action on forum non conveniens grounds.

In a complex case such as this, involving many parties and largely common issues of law and fact, it is in the public interest that all the relevant insurers be parties to the action. A decision to dismiss an action such as this on forum non conveniens grounds should not be made unless all the parties most probably can be made parties in another, more convenient forum. See *Lacey* v. *Cessna Aircraft Co.*, 862 F.2d 38, 44 (3d Cir. 1988); *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir. 1987). Piecemeal resolution of common insurance policy coverage questions or questions concerning the insured's knowledge at various times is inappropriate. Dispersed decision-making wastes the time and resources of parties and the courts and permits inconsistent results. See ALI Complex Litigation Project, ch. 2, comment 2 (c), at 20. (Tent. Draft No. 1, 1989) ("Unfortunately, complex litigation can yield determinations that are slow, enormously expensive, and potentially unjust"). Dismissal of this action can be justified only if there is another forum apparently available for the resolution of the common issues disputed by Grace and the insurance companies in which all insurers can be made parties.

1. Grace first asserts that there is no justification for considering the doctrine of forum non conveniens in this case. It argues that "service of suit" clauses in the applicable insurance policies require that the insurers accept Massachusetts as the forum in which the issues raised in the complaint must be decided. The clauses, an example of which is set forth in the margin,[10] provide in general that, if the insurance company fails to pay any amount due under the policy, the company will submit to the jurisdiction of any United States court and that all matters arising under the policy "shall be

---

[10]"It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court."

determined in accordance with the law and practice of such Court." Grace describes the clause as a forum selection clause.[11] Grace asserts that, not only. does the clause forbid any insurer from arguing forum non conveniens in the selected forum, but also that the clause directs that the issues put in controversy must be decided under the substantive local law of the selected forum (in this case, Massachusetts law).

In our opinion, a service of suit clause does not lock an insurance company into the jurisdiction selected by its insured nor does such a provision bar a court in that jurisdiction from considering a plea of forum non conveniens. A "determination in accordance with the law and practice" of the court that the insured has selected refers to the whole law of the jurisdiction, including principles of forum non conveniens and rules governing the choice of law. We do agree with Grace, however, that the service of suit clause bars an insurance company from relying on its own inconvenience to assert a claim of forum non conveniens.

The better reasoned opinions elsewhere support our conclusion that the clause is not a choice of law provision. See *Chesapeake Utils. Corp.* v. *American Home Assurance Co.*, 704 F. Supp. 551, 557 (D. Del. 1989); *Singer* v. *Lexington Ins. Co.*, 658 F. Supp. 341, 344 (N.D. Tex. 1986). Cf. *Edinburgh Assurance Co.* v. *R.L. Burns Corp.*, 479 F. Supp. 138, 148 (C.D. Cal. 1979) ("parties engaged in the London insurance market" did not consider the clause to be "a contractual agreement for choice of United States law"), aff'd in part and rev'd in part on other grounds, 669 F.2d 1259 (9th Cir. 1982). Contra *Capital Bank & Trust Co.* v. *Associated*

---

[11]We pass by the question whether the record shows that such a clause is included in every policy and what the result might be if it did not so appear. We shall assume that Grace is entitled to a declaration of its rights as to the service of suit clause even though (a) no amounts have yet been "claimed to be due" under these excess insurance policies and (b) it is arguable that the insurers have not repudiated liability in a way that would create a controversy about the service of suit clause justifying declaratory relief. See *Eli Lilly & Co.* v. *Home Ins. Co.*, 794 F.2d 710, 718-720 (D.C. Cir. 1986), cert. denied, 479 U.S. 1060 (1987).

*Int'l Ins. Co.*, 576 F. Supp. 1522, 1525 (M.D. La. 1984) (dictum).

On the claim that a service of suit clause precludes the application of the doctrine of forum non conveniens, we regard favorably the views expressed in *Appalachian Ins. Co. v. Superior Court of Los Angeles County*, 162 Cal. App. 3d 427, 438 (1984). Because the doctrine of forum non conveniens is designed to serve the interests of the public as well as interests of litigants, a private agreement between parties cannot preclude consideration of the public interest component of that doctrine. *Id.* at 437-438. See *Turner & Newell PLC v. Canadian Universal Ins. Co.*, 652 F. Supp. 1038, 1311 (D.D.C. 1987). Cf. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757-758 (3d Cir. 1973) (involving 28 U.S.C. § 1404[a], a modified form of forum non conveniens). See *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253-254 [1981]). We also believe that private factors traditionally associated with a decision on a claim of forum non conveniens, other than the defendant insurer's inconvenience, remain relevant in spite of the presence of a service of suit clause.[12]

We are unimpressed with the reasoning of the court in *Rokeby-Johnson v. Kentucky Agricultural Energy Corp.*, 108 A.D.2d 336, 339 (N.Y. 1985). That court said that "the traditional criteria utilized in the forum non conveniens analysis must defer to [what the New York court called] a freely negotiated, rational forum selection clause the enforcement of which will not work undue hardship on any party." That court was dealing, however, with a service of suit clause, identical to the one in this case (*id.* at 338), and not with a clause dictating a specific forum in which any case would

---

[12]Cases holding that a service of suit clause limits a defendant insurer's right to remove a State court case to a Federal court present a different issue from the one before us. See *Perini Corp. v. Orion Ins. Co.*, 331 F. Supp. 453, 455 (E.D. Cal. 1971); *Euzzino v. London & Edinburgh Ins. Co.*, 228 F. Supp. 431, 433 (N.D. Ill. 1964).

have to be decided. In our view, that court applied the wrong standard in analyzing the forum non conveniens issue.[13]

We reject any notion that a service of suit clause should be read as an unchallengeable authorization to forum shop. If this case is rightly in the courts of Massachusetts for determination on the merits, it must be because the doctrine of forum non conveniens did not permit the motion judge, in his discretion, to decide that the issues should be tried elsewhere.[14]

2. We consider next an issue that has divided the parties, but is not crucial to our decision nor did it affect the motion judge's exercise of discretion. Grace complains that the motion judge's dismissal of the action was based in part on an erroneous conclusion that Grace could add all the excess insurers to either of Maryland Casualty's actions in the Federal court in New York. The judge decided that Grace could properly name as parties even those sixteen insurers that are citizens of the same State as Grace, through a compulsory counterclaim filed under Fed. R. Civ. P. 13 (a) and (h). Any error by the judge in this respect did not affect his discretionary decision, however, because he concluded that, even if

---

[13]We see nothing inherently inappropriate in a forum selection clause (see *The Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 12 [1972]; *Ernest & Norman Hart Bros.* v. *Town Contractors, Inc.*, 18 Mass. App. Ct. 60, 65 [1984]), or in a clause directing what substantive law should govern disputes concerning a contract (*Morris* v. *Watsco, Inc.*, 385 Mass. 672, 674-675 [1982]). The clause in this case simply is not such a clause.

[14]Application of the dissent's cramped reading of the service of suit clause would permit illogical, unfair, and obviously unintended results. The dissent says that this standard clause forbids the application of the doctrine of forum non conveniens and compels the application of the selected forum's substantive law (i.e., bypasses the forum's choice of law rules). If so, an insured seeking a declaration of its rights to indemnity and defense could select any United States jurisdiction in which service could be obtained on the insurer and compel it to decide the case, even though the insured, the risk covered, the injured underlying claimant, the alleged wrongful act and resulting harm, and all witnesses had no connection whatsoever with the selected jurisdiction. If the parties to an agreement want to permit such a result, they should say so. Whether a court in such a jurisdiction would have no alternative but to decide the case, we need not decide.

neither New York action existed, he would still dismiss the action on forum non conveniens grounds. Thus, in reviewing the judge's exercise of discretion, we need not determine whether, under principles of ancillary jurisdiction, a compulsory counterclaim could properly add all the insurers in one or the other of the New York actions.[15]

Whether the Federal court in New York would or would not be a more convenient forum than the Superior Court in this State is not controlling in any event. Maryland Casualty's tactical decision to bring an action in a Federal court rather than in a State court in New York created this jurisdictional question. We should not let that choice obscure the fact that the State courts in New York provide Grace with a forum in which service of process on all insurers is possible. The question is whether, with an action in a State court in New York available to Grace, the judge rightly determined that the Massachusetts action should be dismissed on principles of forum non conveniens.

3. The motion judge did not abuse his discretion in allowing the defendants' motions to dismiss on forum non conveniens grounds. He was entitled to conclude in his discretion that Grace's general right to select the forum in which to assert its claims was overcome by substantial and compelling

---

[15]It is not at all clear that claims against the other insurers could in fact properly be asserted as compulsory counterclaims in the New York actions rather than as independent claims against those insurers. See *Connell* v. *Bernstein-Macauley, Inc.,* 67 F.R.D. 111, 115-116 (S.D.N.Y. 1975); *United States* v. *Techno Fund, Inc.,* 270 F. Supp. 83, 85 (S.D. Ohio 1967).

The general rule has been that persons brought into an action by a compulsory counterclaim come in under the ancillary jurisdiction of the court and that any lack of diversity of citizenship caused thereby does not matter. See 6 C.A. Wright, A.R. Miller & M.K. Kane, Federal Practice and Procedure § 1436, at 274-275 (1990). On the other hand, the opinion of the Supreme Court of the United States in *Finley* v. *United States,* 490 U.S. 545 (1989), decided since the judge allowed the motion to dismiss and not discussed in any supplemental brief, casts a cloud over that general rule. See *Staffer* v. *Bouchard Transp. Co.,* 878 F.2d 638, 643 n.5 (2d Cir. 1989); 6 Wright, Miller & Kane, *supra* at § 1436, at 276. The uncertainty over whether all insurers can properly be added in a Federal court action may make the Federal Court in New York an alternative forum of doubtful convenience.

reasons for concluding that the case should not be tried here and could far better be tried in New York. The judge considered the relevant private and public factors and reached a reasoned determination, not based on any error of law, that Massachusetts was not an appropriate forum in which to resolve the insurance coverage issues dividing the parties and that New York was.

It might fairly be argued that, where the record before the appellate court and the motion judge are the same, the collective judgment of an appellate court on the issue should prevail and appellate review should not be limited by great deference to a motion judge's judgment. See Friendly, Indiscretion About Discretion, 31 Emory L.J. 748, 757-758 (1982). On the other hand, the limited likelihood that any incremental benefit will result from an appellate court's decision in review of the judgment call of a motion judge on a forum non conveniens issue suggests that an abuse of discretion standard should be applied to discourage appeals. We, therefore, shall continue our practice, consistent with an apparently universal rule, of deferring to the discretion of the motion judge. Such a rule is particularly appropriate when a forum non conveniens motion is denied, thus discouraging dilatory appeals. Even when such a motion is allowed, deference to the motion judge's determination is warranted because the plaintiff should be encouraged to consider whether to heed the judge's advice and go elsewhere, rather than cause the expense and delay of an appeal.

The dispute in this case is between a large number of insurance companies and a New York-based conglomerate, represented by a New York-based insurance broker who negotiated almost all the relevant insurance policies in New York. To be sure, a few policies were negotiated and delivered elsewhere. Essentially, however, insurance companies doing business in New York sold coverage to Grace, a New York-based company, after negotiating coverage with Grace's insurance department and Grace's New York broker in that State. New York is the State, more than any other, in which the greatest number of nonparty witnesses and docu-

ments in the hands of nonparties can conveniently be found and made subject to process. The issue of Grace's alleged nondisclosure of material facts concerning asbestos-related risks concerns information that either was or was not revealed in negotiations conducted primarily in New York. A trial in New York is likely to be easier, less expensive, and less complicated than a trial elsewhere. Massachusetts has no special relationship to the underlying factual issues concerning Grace's insurance coverage.

The public factors bearing on the forum non conveniens analysis also support the judge's decision. An action concerning Grace's rights against its primary comprehensive general liability insurers is in litigation in New York. Many issues are apparently the same, and hence accumulated discovery and the efforts of counsel already expended in that action can readily be used in any action in New York concerning the excess insurers' obligations.

We agree with the motion judge that New York law would govern questions concerning coverage under Grace's insurance policies. This legal conclusion supports New York as the distinctly preferable forum. See *New Amsterdam Casualty Co.* v. *Estes*, 353 Mass. 90, 95 (1967). We cannot, of course, dictate what State's local law a court in New York should apply. In the circumstances, we can say that, to obtain uniform and practical coverage nationwide for a multi-State corporation such as Grace, it is desirable that the law of one State govern the interpretation of all Grace's comprehensive general liability insurance policies. We can also say that, if the case were tried here, the substantive law of New York would control the meaning of policy provisions, such as any pollution exclusion clause, and any claim of misrepresentation by Grace. Language in a policy that provides excess coverage, particularly (as is true as to many policies here) a policy that follows the form of an underlying policy, should be interpreted consistently with similar language in the underlying policy.

Whether there is a valid underlying asbestos-related claim against Grace in a particular circumstance will be deter-

mined by the applicable law in the forum where that claim is made. Whether, however, there is a duty to defend or to indemnify under a nationwide comprehensive general liability policy as to such a claim should not depend on the law of the jurisdiction governing that particular claim but rather should be determined by the law governing the interpretation of the insurance policy and its issuance. Such a result produces coherent interstate insurance coverage; appears to conform to justified expectations; offers the prospect of certainty, predictability, and unformity of result; provides relative ease in the determination and application of the governing law; and looks to the law of the State which, as to the legal issues involved, has the most significant relationship with the transaction and the parties. See *Bushkin Assocs.* v. *Raytheon Co.*, 393 Mass. 622, 631-634 (1985).[16]

*Judgment affirmed.*

---

[16]Two courts elsewhere have reached the same conclusion that we have expressed concerning the appropriateness of a New York forum for the resolution of Grace's disputes with its comprehensive general liability insurers for asbestos-related claims. In November, 1989, a trial judge in Minnesota, relying in part on the opinion of the motion judge in this case, dismissed on forum non conveniens grounds an action brought by Grace against certain insurance companies. Grace sought a ruling that it was entitled to defense and indemnity for asbestos-related property damage claims in Minnesota that Grace had settled. *W.R. Grace & Co.* v. *Home Ins. Co.* (4th Jud. Dist., County of Hennepin No. 89-7976, Minn. [1989]).

In *W.R. Grace & Co.* v. *Continental Casualty Co.*, 896 F.2d 865, 877 (5th Cir. 1990), a divided panel held that the District Court should have dismissed Grace's claims against certain insurers for indemnification with respect to asbestos-related claims it had settled with numerous Texas school districts. The court concluded that it was an abuse of discretion for the trial judge not to dismiss the claim for want of jurisdiction, holding that there was no justified basis for ancillary Federal jurisdiction, once the underlying school district claims against Grace were disposed of in that action and "the action was reduced to a dispute between a New York company and its New York insurers, where the governing law would be the law of New York." *Id.* at 872. The court saw the remaining dispute as involving questions of insurance policy interpretation under New York law. *Id.* at 872-877. Texas's relative lack of interest in this dispute, the court concluded, did not justify the exercise of ancillary jurisdiction. *Id.* at 872.

The dissenter agreed that New York law applied (*id.* at 877), but believed that the case should have been kept in the Texas Federal District

O'CONNOR, J. (dissenting). The "service of suit" clause in the applicable insurance policies typically provides as follows: "It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court." *Ante* at 579 n.10. The Superior Court judge reasoned that the clause did not apply in this case because, by its terms, the clause would operate only "in the event of the failure of Underwriters [on the policy] to pay any amount claimed to be due [under the policy]." *Id.* The plaintiff does not allege that the underwriters have failed to pay claims, but simply seeks a declaration that the defendants are obliged to defend the plaintiff against third-party claims and to indemnify the plaintiff if its liability should be established. The judge reasoned that the event that triggers operation of the service of suit clause has not occurred and that, therefore, the clause is irrelevant to the present proceedings. The judge dismissed the action on forum non conveniens grounds without reference to the service of suit clause.

This court affirms, but not for the reason that the service of suit clause has not been triggered. Indeed, the court "assume[s] that Grace is entitled to a declaration of its rights as to the service of suit clause . . . ." *Ante* at 511 n.11. The court affirms in part because of its conclusion that dismissal on forum non conveniens grounds is not prevented by the service of suit provision. I am satisfied (beyond mere assumption) that it is appropriate for the court to declare the rights

Court for "convenience to the litigants and judicial economy" because proof of facts concerning the underlying Texas claims would be essential to the resolution of the coverage disputes. *Id.* at 877-879 (Brown, J., concurring in part and dissenting in part). We discuss the Texas case further in *United Technologies Corp.* v. *Liberty Mut. Ins. Co.*, *post* 591 (1990), decided today.

of the parties under the service of suit clause. However, differently from the court, I would hold that that clause, fairly construed, prevents dismissal of this action on forum non conveniens grounds, and I would reinstate the action.

Surely, as the court recognizes, the service of suit provision obliges the defendants to submit to the jurisdiction of any court in the United States in which the plaintiff brings an action. That much is accomplished by the agreement that the underwriters "will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction." That provision, however, is followed by other words to which meaning also must be assigned if reasonably possible. Those words are "and *all* matters arising *hereunder* shall be determined in accordance with the law and practice of such Court" (emphasis added). The court states, *ante* at 580, that a " 'determination in accordance with the law and practice' of the court that the insured has selected refers to the whole law of the jurisdiction, including principles of forum non conveniens and rules governing the choice of law." That cannot be. If the parties have agreed that the law and practice of the selected court control the determination whether that court is an appropriate forum, as the court says they have, and if the selected court concludes, as the judge concluded here, that the selected court is not an appropriate forum and dismisses the case, the parties' expectation that *all* matters under the policy will be determined by the selected court is defeated. As matters now stand in the present case, all matters arising under the policies will not be determined by the selected court. In fact, none of them will. The principal issues raised by this case relate to coverage. Unless the judgment of dismissal is reversed, all matters relating to coverage will have to be determined, if at all, not in the court selected by the plaintiff, the Massachusetts Superior Court, but instead in the courts of another State and probably in accordance with the laws and practice of that other State. Such a result clearly departs from the expressed intention of the parties.

The inherent contradiction that results from construing the service of suit clause to mean that the " 'determination in accordance with the law and practice' of the court that the insured has selected refers to the whole law of the jurisdiction, including principles of forum non conveniens and rules governing the choice of law," strongly suggests that such a construction is incorrect. Furthermore, such a construction is entirely unnecessary. The relevant clause does not say that all matters *that may arise in the litigation* shall be determined in accordance with the law and practice of the selected court; it says that all matters "arising hereunder," that is, under the policy, shall be so determined. Questions of coverage arise under the policy, but the question whether the Massachusetts Superior Court is a convenient forum in which to resolve those questions is not such a question. The proper interpretation of the service of suit clause is that the plaintiff may invoke the jurisdiction of any competent court in the United States, the defendants will submit to the jurisdiction of that court, and all matters bearing on coverage (arising under the policy) will be determined under the substantive law and the practice of that court, which in this case is the Superior Court of Massachusetts.[1]

The court makes the point that "a private agreement between parties cannot preclude consideration of the public interest component of [the doctrine of forum non conveniens]." *Ante* at 581. I agree with that observation, but, in my view, the observation has little to do with this case. The court does not suggest that it is refusing to enforce the parties' agreement because of public interest concerns or that the judge

---

[1]The court observes that, if the parties to an agreement want to permit an insured to pick the forum and the law to be applied regardless of circumstances, they should say so. *Ante* at 582 n.14. I agree. Here, the parties said so. They specified in their agreements that "all matters arising [under the agreements] shall be determined in accordance with the law and practice of [the court selected by the insured]." The court fails to suggest how an agreement that the insured can select the forum and the law to be applied could be better drafted. The court also fails to explain how the parties' intention as expressed in the policies is fulfilled by the selected court's refusal to decide *all* matters arising under the policies.

below was exclusively motivated by the public factor. The court simply construes the agreement, incorrectly I believe, to include submission to the selected court's determination of forum non conveniens principles and choice of law rules. In any event, since all matters arising under the policies in this case ought to be determined in accordance with the substantive law and practice of Massachusetts, and since the parties and the dispute are associated with Massachusetts in the numerous ways recognized in the court's opinion, public interest considerations standing alone clearly would not justify dismissal of the action.

I would reverse the judgment of dismissal and remand the case to the Superior Court for further proceedings.