Gordon, Robert B., J.
Presented for decision is defendant Liberty Mutual Insurance Company’s Motion to Dismiss. Although styled as amotion to dismiss for “improper venue” under Mass.R.Civ.P. 12(b)(3), Liberty Mutual’s motion more precisely seeks dismissal under the doctrine of forum non conveniens. For the reasons which follow, Liberty Mutual’s Motion will be ALLOWED.
RELEVANT FACTS
The pleadings of record, together with the affidavits and thereto-attached exhibits filed in support of and opposition to the present motion, establish the following pertinent facts.
Plaintiff Vista Property Management, LLC (“Vista”) is a limited liability company organized and existing under the laws of the State of New York. Vista is the owner and operator of the Holiday Inn Arena Hotel[1] which hotel is located in Binghamton, New York.
Liberty Mutual Fire Insurance Company, Inc. (“Liberty Mutual”) is a Wisconsin corporation with a headquarters and principal place of business in Boston, Massachusetts. Liberty Mutual issued Vista a one-year policy of insurance, providing coverage against physical loss and damage to eight properties in New York that included the Holiday Inn Arena Hotel. This policy of insurance lies at the heart of the parties’ present litigation.
On September 7 and 8,2011, the Holiday Inn Arena Hotel suffered substantial damage from water infiltrating its basement. Vista alleges that the water entered the basement due to a malfunctioning of the hotel’s public sanitaiy and sewer system, and that the resulting damage constitutes a covered loss under its policy of insurance with Liberty Mutual. Liberty Mutual maintains that the water which entered the hotel basement sourced to rising rivers caused by excess rainfall from Tropical Storm Lee, and that the property *326 damage is thus subject to a coverage exclusion in the policy for losses occasioned by flood. This factual disagreement regarding application of the Liberty Mutual insurance policy to the facts of the Holiday Inn Arena Hotel’s September 2011 loss is the central (indeed, exclusive) dispute between the parties.
Vista made a timely claim under the Liberty Mutual policy, seeking indemnity for the hotel’s damage in the amount of approximately $3.5 million. On November 21, 2011, Liberty Mutual denied coverage for the loss, invoking the policy’s flood exclusion. There followed a series of communications between counsel for the parties concerning this coverage dispute, which included an August 27, 2012 demand letter from Vista’s attorney announcing an intent to seek relief under Mass. G.L.c. 93A.
On September 11, 2012, amid escalation of the parties’ year-old coverage dispute, Liberty Mutual filed a civil action in the Supreme Court of the State of New York. Liberty Mutual made contemporaneous service of the action on Vista. By this action, Liberty Mutual sought a declaratory judgment that the policy of insurance issued to Vista did not afford coverage for its claims in respect to the water damage to the Holiday Inn Arena Hotel. Vista responded to this filing in three ways. First, on September 19,2012, itñled a complaint with the New York Department of Financial Services, alleging that Liberty Mutual had engaged in “unfair claim settlement practices” under New York law. The gravamen of Vista’s administrative charge is that Liberty Mutual’s policy of insurance in fact provides coverage for the water damage to the Holiday Inn Arena Hotel, and that Liberty Mutual’s denial of coverage and refusal to indemnify its insured was improper. Liberty Mutual has since responded to Vista’s administrative action, and the matter remains subject to pending proceedings in that forum.
Second, on October 8, 2012, Vista filed an Answer to Liberty Mutual’s declaratory judgment action in New York. Vista’s Answer reflects no challenge to either jurisdiction or venue in the New York court. Liberty Mutual’s legal action in New York has now been pending for more than nine months, and Liberty has served written discoveiy on both Vista and other third-party witnesses in New York seeking relevant documents concerning the hotel’s damage. Vista has since responded to this written discovery, and has additionally served discoveiy of its own upon Liberty Mutual.
Third, on December 26,2012, some 32 months after the Liberty Mutual lawsuit was filed, Vista commenced a civil action in this Court. In its Complaint, Vista alleges that, by denying coverage for its claim arising out of the September 2011 damage to the Holiday Inn Arena Hotel, Liberty Mutual breached its contract of insurance with Vista and committed unfair and deceptive acts or practices in violation of Mass. G.L.c. 93A, §11.
By the present motion, Liberty Mutual seeks dismissal of Vista’s Massachusetts action pursuant to the doctrine of forum non conveniens. Allowance of Liberty Mutual’s motion, it argues, would allow the parties’ claims to be litigated and resolved exclusively in the state with a demonstrably greater connection to the subject of the dispute, in which state prior-filed civil and administrative proceedings are already pending. This Court agrees.
DISCUSSION
Mass. G.L.c. 223A, §5 codifies the common-law doctrine offorum non conveniens in Massachusetts. It provides that “[w]hen the court finds that in the interest of substantial justice the action should be heard in another forum, the court may stay or dismiss the action in whole or in part on any conditions that may be just.” In defining the reach of a trial judge’s discretionary authority in regard to forum selection, our courts have made clear that some relative priority is to be accorded the action that was first filed. In Storagenetworks, Inc. v. Metromedia Fiber Network Service, Inc., 13 Mass. L. Rptr. 640, 2001 Mass.Super. LEXIS 447 (Aug. 13, 2001), Judge Fahey cited first filed priority as the “general rule”; and, more recently, Judge Lauriat declared that, “(a]s between a mirror image declaratoiy judgment action and an affirmative action . . . , the general rule favors the forum of the first-filed action.” See Ethicon Endo-Surgery, Inc. v. Pemberton, 27 Mass. L. Rptr. 541, 2010 WL 5071848 at *4 (Mass.Super.Ct. 2010) (quotations omitted).[2]
The priority accorded to first-filed actions, however, is not absolute. “While priority in the bringing of actions is a factor to be considered in choice of forum litigation, it is not controlling, especially when commencement of the competing action has been reasonably close in time.” Storagenetworks, supra at *4. Accord Ethicon Endo-Surgery, supra at *4 (“the first-filed rule is a presumption, and it is not unrebuttable” (quotation omitted)). Moreover, courts will ordinarily give no prioritizing weight to a first-filed action that it determines reflects “procedural gamesmanship”— that is, an anticipatory filing not designed to initiate genuine litigation, but instead to serve as placeholder to force its adversary into an unfriendly forum should such adversary later seek to commence its own lawsuit. See, e.g., Storagenetworks, supra, at *4 (“courts are unwilling to reward a party merely for winning a race to the courthouse and frown upon ‘procedural gamesmanship’ aimed at subjecting an unwilling opponent to an unfavorable forum” (quotations omitted; denying motion to dismiss because movant’s delay in serving its first-filed action reflected intent for suit to serve a priority place-holding function only)); cf. Lexington Ins. Co. v. City of Phoenix, 1996 U.S.Dist. LEXIS 11694, at *8 (D.Mass. 1996) (denying forum priority to first-filed action that was not served until well after subsequent filing by adversary, and was thus deemed *327 an “anticipatory filing”; “the importance of discouraging anticipatory litigation is widely recognized”).
In the present case, this Court observes that Liberty Mutual was the first to file, and by some 32 months. The filing was made fully one year after its coverage dispute with Vista had surfaced; and Vista’s own substantial delay in commencing suit in Massachusetts confirms that this was no breathless race to the courthouse. Moreover, unlike those cases where courts have punished litigants for sharp practices in the area of forum-shopping (such as filing but not serving an action until after litigation is commenced by an opponent in a less friendly venue, see ante), Liberty Mutual made contemporaneous service upon Vista in New York, and has since initiated discovery in accordance with the normal expectations of the rules of civil practice and procedure there. While this Court has no doubt that Liberty Mutual filed its lawsuit in New York with an eye toward attaching jurisdiction over the matter in that forum before Vista could commence litigation in Massachusetts (as Vista’s in-house counsel was then suggesting it might). But this is coin of the realm any time that competing forums are an issue in a litigable dispute; and Liberty Mutual’s action is not the sort of manipulative practice upon which courts denying/orum non conveniens relief have occasionally relied for their decisions. Indeed, it is no less a species of forum-shopping than Vista’s own suit in Massachusetts, which Vista concedes it commenced in order to avail itself of the more favorable remedies it believes might obtain under Mass. G.L.c. 93A. That Liberty Mutual’s action happened to be filed first is a factor the courts have acknowledged will presumptively cut in favor of rather than against its position in respect to forum. Accordingly, this Court is prepared to accord some, but by no means controlling, weight to Liberty Mutual’s declaratory judgment action in New York as the first-filed.
That threshold priority acknowledged, Liberty Mutual, as the party seeking dismissal of Vista’s second-filed action on forum non conveniens grounds, must nevertheless demonstrate that allowing litigation to go forward in Massachusetts would subject the parties, the witnesses and the Court to substantially greater burdens and inconveniences than those which present in New York. The SJC has made clear that determining whether a party asserting forum non conveniens has carried this burden calls upon the trial judge to conduct a balancing of private and public considerations, or “factors.” “But unless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed.” W.R. Grace Co. v. Hartford Accident & Indemnity Co., 407 Mass. 572, 578 (1990) (no abuse of discretion in motion judge’s dismissal on forum non conveniens grounds, where judge found plaintiffs right to select forum “overcome by substantial and compelling reasons for concluding that the case should not be tried here and would be far better tried in New York”).
The factors to be considered in this balancing exercise are a familiar set of issues and concerns (some institutional and others distinctive to the matter sub judice) which present themselves whenever a court is called upon to make venue-related judgments. The SJC has identified the pertinent considerations in the following way:
Among the private factors relevant to the case before us are the practical problems that do or do not make a trial easy, expeditious and inexpensive, such as the ease of access to proof, the availability of compulsory process, and the cost of attendance of witnesses. Factors of public interest include administrative burdens caused by litigation that has its origins elsewhere and the desirability of the trial of a case in a forum that is at home with the governing law.
W.R. Grace, supra, 407 Mass, at 578. Accord Joly v. Laroque Lumber Ltd., 397 Mass. 43, 44 (1986) (identifying similar factors, and finding no abuse of discretion in trial court’s allowance of motion to dismiss on forum non conveniens grounds where all parties were Canadian, access to witnesses and discovery was more favorable in Canada, and Canadian law appeared applicable). [3]
In the present case, after giving due consideration to the full range of public and private factors that our appellate courts have identified as informing the forum non conveniens balance, this Court finds that Liberty Mutual has amply demonstrated that New York is by substantial measure the more appropriate venue in which to litigate this insurance coverage dispute. The location of the subject property loss is Vista’s Holiday Inn Arena Hotel in Binghamton, New York. Each and every witness to the events of September 7-8, 2011 likewise appears to reside in New York. These witnesses will presumably include employees of the hotel; employees of the City of Binghamton responsible for its municipal sewerage system and familiar with the circumstances surrounding the flooding of the hotel; and other third-party witnesses, such as the local contractors who performed repairs at the hotel following its September 2011 flooding. None of these witnesses could possibly regard Boston, Massachusetts as a convenient venue in which to appear; and this fact is not affected by Vista’s professed eagerness to make its employees available to testify here.[4] The simple fact of the matter is that all or virtually all of the witnesses with relevant knowledge about the subject of this litigation reside in New York. The convenience of the parties, the costs in time and money to the witnesses, and the availability of compulsory process all militate strongly in favor of New York as the more appropriate forum for litigating the Liberty Mutual/Vista coverage dispute.
*328 By the same token, the record reflects that all of the most pertinent physical evidence and documents related to the damage at the Holiday Inn Arena Hotel, the causes of same, and the repairs thereof, will be found in New York. This is to say nothing of the evidentiary record of Liberty Mutual’s claims handling practices in this matter being developed by the New York Department of Financial Services, an administrative agency conducting an investigation in which both parties are participating without protest. Access to these materials, and to any relevant witnesses associated with this proceeding, will no doubt be substantially facilitated by litigation pending in New York rather than Massachusetts.
Vista cannot plausibly suggest that litigating its coverage dispute against Liberty Mutual in the State of New York poses any sort of unfair hardship. Its properties and witnesses are located in New York; it is already defending a civil lawsuit addressed to the identical issues in New York; and it even initiated an administrative complaint concerning Liberiy Mutual’s purported unfair insurance practices in New York. As the SJC has recognized, pyramiding on top of such proceedings additional litigation in a remote forum like Massachusetts disserves the interest in judicial economy, and invites the sort of inconsistent results that might confuse the parties and prolong their dispute. See W.R. Grace, supra, 407 Mass, at 579 (“Dispersed decision-making wastes the time and resources of parties and the courts and permits inconsistent results”). Thus, far from rebutting the presumption favoring the venue in which the first action was filed (New York), the facts presented to the Court here only reinforce the conclusion that New York has the far closer connection to the issues in litigation and is the demonstrably more appropriate forum in which to resolve the Vista/Liberty Mutual coverage dispute.
In opposition to Liberty Mutual’s requested Jorum non conveniens dismissal, Vista advances three principal arguments. First, Vista emphasizes that Liberty Mutual’s corporate headquarters is located in Boston, and that a Massachusetts court thus has both jurisdiction over it and a substantial interest in the lawfulness of its insurance claims practices. True though this assertion is, however, the Court finds it to be largely immaterial to the factors-balancing exercise that a forum non conveniens decision calls upon it to undertake. Liberiy Mutual has never maintained that this Court could not properly assert jurisdiction over it—only that substantial practical and prudential reasons make New York a more appropriate venue for the litigation. Vista’s first point fails to rebut this contention.
Second, Vista maintains that the unavailability of Chapter 93A-type remedies in New York is a factor cutting in favor of the preservation of its action in Massachusetts. This Court does not agree. For one, it appears doubtful that, regardless of where venue for this litigation is sited, Massachusetts law would apply to Vista’s coverage-based claims. It is well settled that in an action involving a disputed property insurance policy, and in the absence (as here) of a choice of law clause in the policy itself, choice of law is ordinarily determined by the “principal location of the insured risk.” Clarendon Nat’l Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass.App.Ct. 492, 496 (2004). In this case, all of the Vista properties insured under the Liberty Mutual policy are situated in New York; and, in all events, given that this case primarily concerns the Holiday Inn Arena Hotel in Binghamton, Massachusetts cannot plausibly be thought to have a more substantial interest in the case than New York'.
As for Chapter 93A, the Court is further doubtful that this statute will apply to the allegations Vista has pleaded in the present action. Mass. G.L.c. 93A, § 11 limits claims thereunder to unfair or deceptive acts that “occurred primarily and substantially within the commonwealth.” Massachusetts courts have consistently rejected Chapter 93A claims where the “center of gravity of the circumstances that gave rise to the claim” did not “occur primarily and substantially within the Commonwealth.” Kuwait Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 472 (2003). Vista’s complaint contains no allegations that suggest it would be able to satisfy this statutory requirement.
Furthermore, whether Massachusetts law will govern Vista’s claim, and if so whether Chapter 93A can apply, are questions that a New York court can answer virtually as well as a Massachusetts one. Even in the unlikely event Massachusetts law governed any of the claims Vista has asserted, this Court does not find that such fact drives the forum non conveniens analysis.[5] It would be but one public factor (the perhaps greater difficulty of applying a foreign state’s law) against a substantially weightier body of countervailing factors. See supra
Finally, Vista argues that its lawsuit consists of two claims—a breach of contract claim based on the insurance policy, and a Chapter 93A claim based on Liberty Mutual’s unfair and deceptive practices in denying coverage it knew to be due. Vista maintains that the relevant witnesses and documents relating to the latter claim will be found in Boston, Massachusetts, thus equalizing many of the private factors that would logically site venue for this action in New York. Vista’s argument is unpersuasive for two reasons. First, and most importantly, a review of Vista’s Chapter 93A claim in this case finds no allegations of unfair or deceptive practices on the part of Liberty Mutual in either the policy underwriting, insurance brokerage, or claims adjustment for Vista’s loss. To the contrary, Vista’s entire Chapter 93A claim rests on the contention that Liberty Mutual willfully and intentionally refused to acknowledge its coverage obligation, and failed to make a fair offer of settlement in light of the reasonableness of Vista’s construction of the policy. This claim thus turns almost entirely on the same core dispute at the heart of Vista’s breach of contract claim—viz., whether Liberiy Mutual’s policy is reason *329 ably interpreted to afford coverage for the Holiday Inn Arena Hotel loss, or whether the policy’s flood exclusion bars such coverage. As discussed ante, the relevant factual witnesses and documents bearing on this coverage question will be found to an overwhelming degree in New York rather than Massachusetts. For forum non conveniens purposes, therefore, Vista’s two claims stand on very much the same footing.
Second, even if the Complaint alleged particular misconduct in the manner with which Liberty Mutual brokered its insurance policy and/or adjusted Vista’s claim for coverage (and it does not), such matter would still not implicate Massachusetts sufficiently to move the forum non conveniens needle away from New York. Liberty Mutual’s policy may have been developed in Massachusetts; but Vista’s claim in no way concerns the lawfulness of the policy itself. Beyond that lone fact, the motion record reflects that none of the actors involved in either issuance of the insurance policy to Vista or the handling of Vista’s claim by Liberty Mutual was connected in any way to Massachusetts. Liberty Mutual issued the subject policy to Vista through Vista’s New York-based broker. Likewise, one Melvin Jeffers served as the supervisory adjuster assigned to Vista’s coverage claim, and played a direct role in the insurer’s investigation of and response to such claim. In this regard, Mr. Jeffers supervised one Corey Erb, the front line adjuster assigned to the Vista claim. Jeffers and Erb were thus together the persons responsible for Liberty Mutual’s decision to deny coverage for the loss at the Holiday Inn Arena Hotel. Significantly (for present purposes), Jeffers worked out of his home in Tennessee and out of Liberty Mutual’s offices in North Carolina and Ohio. For his part, Erb lived and worked in North Carolina during the adjustment of Vista’s insurance claim. Thus, even if Vista’s cause of action in the present case were in substance directed to Liberty Mutual’s activities in arriving at its coverage position (and it is not), none of such activities would point to Massachusetts as an appropriate forum for the litigation.
CONCLUSION AND ORDER
All roads lead to Rome in this case, or at least to New York. The subject property is situated in New York; the water damage and related losses occurred in New York; virtually all foreseeable witnesses reside in New York (except for Liberty Mutual’s claims personnel in Tennessee and North Carolina); the physical evidence and documents bearing upon the causes of the hotel’s damage and the costs to repair the same will be found in New York; and the identical issues presented for decision in Vista’s Massachusetts lawsuit are subject to previously filed civil and administrative proceedings pending and moving forward in New York. New York is, therefore, the manifestly more appropriate forum in which to address Vista’s claims and Liberty Mutual’s defenses.
Accordingly, and subject only to the condition that Liberty Mutual not oppose (other than on substantive futility grounds) Vista’s anticipated amendment to its pleading in the New York proceeding to assert counterclaims that mirror the claims asserted in this action, Liberty Mutual’s Motion to Dismiss for forum non conveniens is hereby ALLOWED.

During the motion hearing, counsel clarified that a Vista affiliate, rather than Vista itself, may in fact be the hotel’s owner of record.

fhis rule follows the prevailing practice under the analogous federal venue transfer statute, 28 U.S.C. §1404. See, e.g., Kleinerman v. Luxtron Corp., 107 F.Sup.2d 122, 124 (D.Mass. 2000) (“Where- the overlap between the two suits is nearly complete, the usual practice is for the court that first had jurisdiction to resolve and the other court to defer”); see also Holmes Group, Inc. v. Hamilton Beach/Proctor Sílex, Inc., 249 F.Sup.2d 12 (D.Mass. 2002) (“Where two identical actions are pending concurrently in two federal courts, the first-filed action is generally preferred, even if it is a request for declaratory judgment”); GIOLumonics, Inc. v. BioDiscovery, Inc., 112 F.Sup.2d 99 (D.Mass. 2000) (similar).

The factors a federal court applies when determining whether a particular forum is substantially more inconvenient than another under its cognate venue transfer statute are similar, and include (1) the plaintiffs choice of forum, (2) the convenience of the parties, (3) the convenience of witnesses, (4) the location of documents, (5) the connection between the forum and the issues in litigation, (6) the law to be applied, and (7) the public interests at stake. See Kleinerman v. Luxtron Corp., 107F.Sup.2d 122, 125 (D.Mass. 2000).

Vista obviously does not own these witnesses, and thus cannot compel their attendance at court proceedings more than 300 miles away. Indeed, Vista may no longer even employ these witnesses when the case comes to trial.

It is well to note that New York law does appear to afford insureds statutory remedies for improper claims handling practices, and these remedies include the recovery of consequential damages. SeeN.Y. Unfair Claim Settlement Practices Act, N.Y. Insurance Law §264. It seems dubious for Vista to insist (as it has) that such remedies are inadequate, when Vista has itself already seen fit to pursue them administratively before the New York Financial Services Department.