HENRY R. ROKEBY-JOHNSON, Individually and on Behalf of STURGE SYNDICATE AND OTHER CONCERNED UNDERWRITERS AT LLOYDS, Respondent, v KENTUCKY AGRICULTURAL ENERGY CORPORATION et al., Appellants.

FEDERAL INSURANCE COMPANY et al., Respondents, v KENTUCKY AGRICULTURAL ENERGY CORP. et al., Appellants.

First Department, May 14, 1985

### APPEARANCES OF COUNSEL

*Paul G. Pennoyer, Jr.,* of counsel (*Jerome C. Katz* and *Donald W. Rose* with him on the brief; *Chadbourne, Parke, Whiteside & Wolff,* attorneys), for Kentucky Agricultural Energy Corp., appellant.

*Thomas M. Geisler, Jr., Bradford Anderson* and *Henry A. Udow* (on the brief with *Paul G. Pennoyer, Jr.; Shearman & Sterling,* attorneys), for Citibank, N. A., appellant.

*Leonard S. Leaman* of counsel (*Peter L. Keane* with him on the brief; *Lord, Day & Lord,* attorneys), for Henry R. Rokeby-Johnson, respondent.

*Robert A. Rubin* of counsel (*Lisa A. Banick* with him on the brief; *Postner & Rubin,* attorneys), for Federal Insurance Company, respondent.

*Myron C. Martynetz* of counsel (*Anthony Lanzone* and *Charmaine Marlowe* with him on the brief; *Lanzone & Kramer,* attorneys), for Employers Insurance of Wausau, respondent.

## OPINION OF THE COURT

MURPHY, P. J.

The substantive issue presented on this appeal by defendants Kentucky Agricultural Energy Corporation (KAEC) and Citibank, N. A., concerns the enforceability of a forum selection clause contained in certain insurance policies issued to KAEC by plaintiffs Henry Ralph Rokeby-Johnson, individually and on behalf of certain underwriters at Lloyds of London (hereinafter collectively, Lloyds), Federal Insurance Company (Federal) and Employers Insurance of Wausau (Wausau). The court below denied the defendants' motion to dismiss or stay the two New York actions herein pending the determination of an action brought in the State of California by KAEC, Citibank and other plaintiffs against the insurers named above. For the reasons discussed below, we reverse the lower court's determination and order that these New York actions be stayed pending the determination of the California suit.

KAEC, a Kentucky corporation, was formed in 1980 for the purpose of building, owning and operating a fuel alcohol plant near Franklin, Kentucky. Eighty-three per cent of KAEC's stock is currently owned by Chevron, USA, Inc., a California corporation.

To construct the plant, KAEC entered into a design contract with C&I Girdler Company, a subsidiary of Bechtel Corporation, and a construction contract with Becon Construction Company, also a Bechtel subsidiary. Both contracts contained guarantees that, upon its completion, the plant would meet certain minimum production specifications.

KAEC financed construction of the plant by securing a loan of $35,400,000 from Citibank and Simpson County Bank of Franklin, Kentucky. As a condition of the loan KAEC was required to obtain "performance guarantee insurance" insuring against losses which might be incurred if the plant failed to meet the minimum production specifications outlined in the design and

construction contracts. This insurance was obtained through a New York insurance broker, Fred S. James, in an amount totaling $35,400,000.

James placed the performance guarantee insurance in the form of a primary policy and four layers of excess coverage. The primary policy was underwritten by Lloyds of London and provided the first $5,000,000 of coverage. Excess policies were provided by Federal Insurance Company for the next $5,000,000, Employers Insurance of Wausau for the next $10,000,000, Midland Insurance Company for the next $5,000,000 and International Surplus Lines Insurance Company for the final $10.4 million. The excess policies expressly incorporated the substantive terms of the primary Lloyds policy, except as to amount of coverage and premiums. The Lloyds policy contained a service of suit clause providing that: "It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Assured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all the requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court."

It is undisputed that KAEC has paid all premiums due under the primary and excess policies.

Shortly after the starting of the plant in December 1982, it became clear that the facility failed to meet the minimum production specifications set forth in the design and construction contracts. By April of 1984, the plant had incurred losses totaling more than $19,000,000. On June 9, 1983, KAEC gave written notice of loss to James as agent for Lloyds and the excess carriers. Despite repeated inquiries, the carriers neither accepted nor rejected the claim.

On June 18, 1984, Lloyds brought the first of the instant actions in New York. Federal and Wausau brought the second a few days later. By letter dated June 19, 1984, Lloyds for the first time rejected KAEC's claim. Except for the complaints filed in their action, Federal and Wausau have never responded to KAEC's claim.

Briefly stated, the insurers' actions for rescission are based upon alleged misrepresentations made by the broker James to Lloyds to the effect that the technology of the gasohol plant and its process were not a "prototype" but had existed for many years in Europe and in Brazil; that the Bechtel subsidiaries had

experience in the construction of gasohol plants, and that the technology and performance specifications of 80 gasohol plants previously constructed by a German manufacturer were similar to the construction contemplated in Kentucky.

Shortly after the commencement of the insurers' New York actions, KAEC, in return for additional financing, irrevocably assigned to Chevron its rights and interests in the policies issued by Lloyds, Federal and Wausau. On July 18, 1984, KAEC, Chevron, Citibank and Simpson filed suit against Lloyds, Federal, Wausau and the other excess carriers in the California Superior Court in San Francisco. By this action, plaintiffs sought a declaratory judgment that the insurance policies are in full force and effect; they also sought damages against the underwriters for breach of contract, tortious breach of the covenant of good faith and fair dealing, and unfair claims practices under California law.

Thereafter the insureds, KAEC and Citibank, moved in the Supreme Court in New York for an order staying or dismissing the New York actions on the grounds, *inter alia,* that the forum selection clause in the Lloyds policy gave the insureds, not the insurers, the right to select the forum in the event of a refusal by the insurers to pay a claim under the policies. Thus, the insureds assert, California is the proper forum for the resolution of this dispute. It is from the denial of that motion for a stay or dismissal that KAEC and Citibank now appeal.

Essentially, Special Term found that both the California and New York actions were properly commenced and that the forum selection clause "has absolutely no effect upon plaintiff's [Lloyds] right to sue on the basis of plaintiff's perception of a taint by fraud." Further, the court, applying the analysis of forum non conveniens, found that the State of New York had a stronger nexus to the parties and transactions at issue than did California, which is the State of incorporation of Chevron. Despite these considerations, however, and under the facts of this case, we hold that the traditional criteria utilized in the forum non conveniens analysis must defer to a freely negotiated, rational forum selection clause the enforcement of which will not work undue hardship on any party.

Traditionally, courts have been generally reluctant to enforce forum selection clauses on the theory that such provisions may operate to improperly divest a court of jurisdiction. By 1972, however, the Supreme Court of the United States noted that the traditional view had been rendered "hardly more than a vestigial legal function" (*The Bremen v Zapata Off-Shore Co.,* 407 US

1, 12 [1972]). In *Bremen,* the Supreme Court enforced a provision included in an international maritime towage contract mandating (p 2) that "[a]ny dispute arising [thereunder] must be treated before the London Court of Justice", despite the fact that neither party to the contract nor any aspect of the transaction had any connection with England. Holding (p 10) that forum selection clauses are "prima facie valid", the court noted (p 15) that, to override such a clause, a party must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching". *Bremen* (p 18) essentially abandoned the forum non conveniens standard for a stricter standard of unreasonableness which makes it "incumbent on the party seeking to escape his contract to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court."

Though the courts of this State have had few recent opportunities to consider this issue, the *Bremen* trend is clearly reflected in their pronouncements on the subject. Even before *Bremen* (*supra*), this court had taken notice of a growing nationwide trend toward the more liberal enforcement of forum selection clauses, where such clauses are "freely and advisedly entered into" (*Export Ins. Co. v Mitsui S. S. Co.,* 26 AD2d 436, 438 [1st Dept 1966]). In *Young & Co. v Leong* (53 AD2d 515 [1st Dept], *appeal dismissed* 40 NY2d 984 [1976]), this court reversed a lower court's order dismissing plaintiff's complaint on grounds of forum non conveniens. In that case defendant Leong was a Hawaii resident; the underlying dispute arose in Hawaii; the relevant records were in Hawaii, none of the witnesses resided in New York; and the plaintiff, though doing business in New York, also had an office in Hawaii. Though these considerations would, of course, have weighed heavily in a forum non conveniens analysis, this court enforced a forum selection clause that had been negotiated by the parties which entitled plaintiff Arthur Young to litigate disputes arising under the parties' contract "in the Federal or state courts located in the County and State of New York" (*supra,* at p 516). In so doing, we noted (p 516) that: "It seems that the comparative weight of all the factors involved herein was not adequately considered at Special Term, which regarded little more than convenience of witnesses and parties as of importance. All of these factors doubtless were — or should have been — considered by the parties in arriving at their agreement upon a forum. In short, by their own exercise of discretion in agreeing upon a forum, the parties themselves

obviated considerations of inconvenience to a party or a witness * * * And contracts are made to be enforced".

In 1978, citing *Young* (*supra*), the Second Department, in an action brought by a New York plaintiff against Travelers Indemnity Company for the proceeds of a surety bond, held that "[t]he most substantial * * * factor" in its decision to dismiss the New York action on the bond was a forum selection clause providing that any such action must be brought in the State of New Jersey. (*Alwinseal, Inc. v Travelers Indem. Co.,* 61 AD2d 803, 804 [2d Dept 1978].)

Most recently, this court affirmed the decision of the lower court in *Ideal Mut. Ins. Co. v Elkhorn ReInsurance Co.* (109 AD2d 1110). In *Ideal Mut.,* the court denied defendant's motion to dismiss the New York action on the grounds of forum non conveniens despite the fact that the documents relevant to the case were located in England, the dispute arose there, and there remained a question as to whether New York jurisdiction would be available over all the members of the defendant reinsurance syndicate. In so deciding, the lower court there noted that the parties had negotiated a forum selection clause by which they had agreed to litigate disputes in the United States, rather than England, and "the contractual promise was made to be enforced" (*Ideal Mut. Ins. Co. v Elkhorn ReInsurance Co.,* NYLJ, Jan. 2, 1985, p 6, cols 2, 4 [Sup Ct, NY County).

We are aware of plaintiff's contention that, since its New York action is one for rescission of the insurance policies due to fraud in the inducement, the forum selection clause does not govern here. However, it is not alleged that the forum selection clause itself was induced by fraud; therefore, the enforcement of that clause is not affected. (*Scherk v Alberto-Culver Co.,* 417 US 506, 519, n 14 [1974]; *see also, Matter of Weinrott [Carp],* 32 NY2d 190 [1973] [dealing with arbitration clause]; *Matter of Schachter [Witte & Co.],* 52 AD2d 121 [1st Dept 1976], *affd* 41 NY2d 1067 [1977] [arbitration clause].) Here, then, as in *Young* and *Alwinseal* (*supra*), that provision of the relevant insurance policies designating New York as the proper forum for the resolution of disputes arising from nonpayment under the policies must be a "substantial factor" in this court's determination of a proper forum. Nor, in this case, is that "substantial factor" outweighed by other considerations. It is true, as plaintiffs point out, that certain of the transactions which form the basis of these suits did occur in New York, and that California's main factual connection with this dispute consists of KAEC's fairly recent assignment to Chevron, a California corporation. How-

ever, many of the relevant witnesses and documents are apparently to be found in England, Kentucky, California and elsewhere. Moreover, the parties are large corporations with the resources to litigate anywhere in the country. We note, too, that the specific forum selection clause at issue here is couched in language identical to that which plaintiff Lloyds itself has used in insurance policies for more than three decades. Lloyds cannot now be heard to argue that the very clause it has been utilizing for 30 years is unenforceable or ambiguous.

Nor are we convinced by plaintiff's argument that their New York action, for rescission of the respective insurance policies, and the California action, which sounds in both contract and tort, are so dissimilar as to properly proceed separately. In each case, the parties are seeking a declaration as to the validity of the insurance policies; the issues in the two actions are essentially the same, and the Simpson County Bank, the one party originally omitted from the New York action, has since been added thereto. Both actions are now in a very preliminary stage, no answer having been served in either. Under these circumstances, this court may stay or dismiss the instant action pending the outcome of the California litigation (CPLR 3211 [a] [4]).

We are aware that the court below held that the forum selection clause applied essentially to an action brought by the insureds and did not preclude the insurers from bringing their own action in another forum. However, this analysis gives the party who wins the race to the courthouse the power to choose his own forum. And, in this case, it may be argued that the insurers won their race to the courthouse by deliberately delaying their formal rejection of the insureds' claims. The forum selection clause here applied "in the event of the failure of the Underwriters hereon to pay any amount claimed to be due". But Lloyds did not formally notify the insureds of its refusal to pay until 24 hours after Lloyds instituted this suit; Federal and Wausau have yet to formally notify the insureds of their rejection of the claims. Thus, the insurers had it within their power to deliberately delay the one event that would trigger the forum clause in the insureds' favor. That sort of procedural gamesmanship has been properly rejected before (*Companion Life Ins. Co. v Matthews,* 547 F Supp 836 [SDNY 1982]) and cannot be countenanced here.

Finally, we reject the contention of plaintiffs Federal and Wausau that the forum selection provision in the Lloyds policy is not incorporated into their respective excess carrier policies. Their contention that "Part A" and "Part B" of the Lloyds policy

are really two separate policies and that Part B, which contains the forum selection clause, does not apply to the excess carriers, is strained and artificial. The Lloyds policy contains only one policy number, clearly referable to both Parts A and B. The "Schedule" attached to the policy, again referable to both "Parts", contains a "Service of Suit Clause Nominee" which is an obvious cross reference to the forum clause. Since the Federal and Wausau policies expressly incorporate the substantive terms of the Lloyds policy except as to amount of coverage and premiums, the forum selection clause obviously applies to these parties too. That clause is a contractual provision which should be enforced.

Accordingly, the orders of the Supreme Court, New York County (Wright, J.), dated October 3, 1984, denying defendants KAEC's and Citibank's motions to dismiss or stay this action pending the outcome of the California suit, should be reversed, on the law and the facts, and in the exercise of discretion, and the motions granted insofar as to order the stay until the determination of that action, with costs.

KUPFERMAN, ASCH and BLOOM, JJ., concur.

Three orders, Supreme Court, New York County, all entered on October 11, 1984, unanimously reversed, on the law and the facts, and in the exercise of discretion, and the motions granted insofar as to order the stay until the determination of that action. Appellants shall recover of respondents submitting briefs one bill of $75 costs and disbursements of this appeal.