[635 NYS2d 173]

COLUMBIA CASUALTY COMPANY et al., Appellants, v BRISTOL-MYERS SQUIBB COMPANY et al., Respondents, and AETNA CASUALTY & SURETY COMPANY et al., Appellants, et al., Defendants.

First Department, October 26, 1995

## APPEARANCES OF COUNSEL

*Lawrence C. Drucker* of counsel *(Richard C. Yeskoo* on the brief; *Fabricant, Yeskoo & Colangelo, P. C.,* attorneys), for First State Insurance Company and others, appellants.

*Stephen Sonderby* of counsel *(Michele T. Oshman* on the brief; *Haskell & Perrin,* and *Holtzmann, Wise & Shepard,* attorneys), for Gibraltar Casualty Company, appellant.

*Robert Novack* of counsel *(Joseph J. Schiavone, Thomas M. Laudise* and *Elda Beylerian* on the brief; *Budd Larner Gross Rosenbaum Greenberg & Sade, P. C.,* attorneys), for North Star Reinsurance Company, appellant.

*Andrew T. Berry* of counsel *(Gita F. Rothschild* and *Anthony J. Del Piano* on the brief; *McCarter & English,* attorneys), for Bristol-Myers Squibb Company and others, respondents.

*Andrew J. Perel* of counsel *(Sheryl B. Galler* and *Theodore A. Howard* on the brief; *Rosenman & Colin,* and *Hopkins &*

*Sutter,* attorneys), for Employers Commercial Union Insurance Company, appellant.

*Gregory Hopp* of counsel *(Blatt Hammesfahr & Eaton,* attorneys), for Admiral Insurance Company and others, appellants. (One brief filed.)

### OPINION OF THE COURT

TOM, J.

On this appeal, we are called upon to reconsider our holding in *Rokeby-Johnson v Kentucky Agric. Energy Corp.* (108 AD2d 336) in light of subsequent Federal and State court decisions which have called into question *Rokeby-Johnson's* ruling that a provision commonly used in insurance policies constituted a mandatory "forum selection clause" in favor of the insured rather then a permissive "service of suit clause."

This action involves the thousands of products liability claims relating to silicone gel breast implants brought against defendants-respondents Bristol-Myers Squibb Company (Bristol-Myers), Medical Engineering Corp. (MEC), Aesthetech Corporation (Aesthetech), Natural-Y Surgical Specialties, Inc. (Natural-Y), and Cooper Companies, Inc. (Cooper), all of which were involved in the manufacture and sale of the allegedly defective product.

MEC, which was acquired as a wholly owned subsidiary by Bristol-Myers in 1982, had commenced manufacturing "smooth-walled" breast implants in 1971. Natural-Y, a distributor of polyurethane-coated breast implants and Aesthetech, a manufacturer of such products, were acquired by Cooper in 1987 as wholly owned subsidiaries. In 1988, Cooper sold all the outstanding capital stock in Natural-Y and Aesthetech to MEC, which continued to manufacture and distribute the implants as a Bristol-Myers wholly owned subsidiary.

Shortly thereafter, the use of the breast implant products came under public scrutiny due to a variety of safety concerns and related injuries which eventually led to the halt of sales in 1991, as well as an avalanche of claims by patients who had received the implants. On January 6, 1992, the Food and Drug Administration (FDA) banned the sale or use of silicone gel breast implants for cosmetic purposes.

Despite having paid huge premiums for product liability insurance coverage, Bristol-Myers, MEC, Aesthetech and Natural-Y began receiving "disclaimers of rights" and "reservation of rights" letters from the various insurance companies named in this action. Bristol-Myers maintains that, as of August 8, 1994, it had been named as a defendant in 1,128 lawsuits in Texas involving 5,624 claimants and 470 lawsuits in New York with 522 claimants. In addition, there were 6,676 other lawsuits brought by 13,675 breast implant recipients in various other State and Federal jurisdictions. At least 13 of the insurance companies involved maintained their principal place of business in New York.

In March 1993, Bristol-Myers commenced a declaratory judgment action in Beaumont, Texas, in order to adjudicate its right to coverage of the claims arising from silicone breast implants as against the various insurance companies that were refusing to provide coverage under their policies. Subsequent to Bristol-Myers obtaining a stay of all the Texas personal injury actions pending the resolution of the declaratory judgment action, 10 of the insurance companies disclaiming coverage commenced the instant declaratory judgment action in the New York State Supreme Court on or about August 13, 1993 seeking a declaration that they are not obligated to defend and indemnify Bristol-Myers for claims arising out of the breast implants. The named defendants are: Bristol-Myers; the insurers which provided general liability coverage to Bristol-Myers between 1986 and 1992 (those companies were not named by Bristol-Myers in the Texas declaratory judgment action); MEC and the insurance carriers which provided general liability insurance to it between 1971 and 1982, when it was acquired by Bristol-Myers; Natural-Y, Aesthetech and the insurers which provided general liability insurance coverage to them between 1981 and 1988, when they were acquired by MEC; and Cooper and the insurance carriers which provided general liability coverage to it in 1987 and 1988.

Bristol-Myers thereafter moved for dismissal of the New York action on the ground of forum non conveniens (CPLR 327) in favor of the previously filed Texas action or, in the alternative, to stay this action pending the disposition of the Texas action. Bristol-Myers argued, *inter alia,* that all of the insurers were bound by a forum selection clause, contained in

the policies, expressing the insurers' consent to submit to the jurisdiction chosen by the insured.

The policies issued by plaintiffs insurers to Bristol-Myers and its subsidiaries contained the following clause: "It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, *the Underwriters* hereon, *at the request of the Assured, will submit to the jurisdiction of any Court* of competent jurisdiction *within the United States and will comply with all the requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.* It is *further agreed that service of process in such suit may be made* as stated in Item 7 of the Declarations, and that in any suit instituted against any one of them upon this policy, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal." (Emphasis added.)

The IAS Court granted Bristol-Myers' motion to the extent of staying the New York action pending the determination of the Texas lawsuit. In reaching its conclusion, the IAS Court felt constrained by this Court's holding in *Rokeby-Johnson v Kentucky Agric. Energy Corp. (supra,* at 339), which, in analyzing an identical insurance clause as that in issue herein, concluded that "the traditional criteria utilized in the forum non conveniens analysis must defer to a freely negotiated, rational forum selection clause the enforcement of which will not work undue hardship on any party." The *Rokeby-Johnson* Court then held that the insurer's choice of forum was binding upon the insured pursuant to the "forum selection clause" which was found to be a " 'substantial factor' " in the Court's determination of a proper forum *supra,* at 341). The court below adhered to the ruling of *Rokeby-Johnson* and sustained Bristol-Myers' choice of Texas as the controlling forum. While the lower court granted the stay under the constraint of *Rokeby-Johnson* it, however, noted that: "If the only issue before this court was whether the action should be dismissed or stayed based on *forum non conveniens* grounds, *this court would not hesitate to deny the motion* and retain jurisdiction over this action." (Emphasis added.)

Plaintiffs now appeal and, upon reconsideration, we agree and reverse. Plaintiffs' primary contention is that the above

provision should not act as a bar to this action because it is a "permissive" rather than a "mandatory" provision.

We begin our re-examination of *Rokeby-Johnson* with a reading of the language of the provision in issue to determine whether such clause unequivocally granted the insured the exclusive right to choose the sole forum to hear all disputes arising under the policy. The language employed in the clause must be scrutinized to ascertain the intent of the parties.

Contrary to the finding in *Rokeby-Johnson,* the wording of the provision is clearly permissive in its construction and contains no mandatory language binding the parties to a particular forum. The clause merely states that the insurer will submit to the jurisdiction to be selected by the insured. There is no indication that such selection shall be the exclusive forum nor of the parties' intent to submit to a particular venue. The language of the clause constituted a "service of suit clause" rather than a mandatory and exclusive forum selection clause. Unlike a mandatory forum selection provision, a "service of suit clause" is akin to a permissive consent to forum clause which does not bar subsequent actions commenced by the insurer, such as the within declaratory judgment action, in a proper forum of the insurer's choice, nor does it bar consideration by the court of the selected forum of a forum non conveniens application *(see, Price v Brown Group,* 206 AD2d 195, *rearg and lv denied* App Div, 4th Dept, Mar. 17, 1995; *Utica Mut. Ins. Co. v Bristol-Myers Squibb Co.,* 213 AD2d 1046; *Blanco v Banco Indus. de Venezuela,* 997 F2d 974 [2d Cir]; *International Ins. Co. v McDermott Inc.,* 956 F2d 93, *cert denied* 506 US 826, 113 S Ct 82; *Grace & Co. v Hartford Acc. & Indemn. Co.,* 407 Mass 572, 555 NE2d 214; *Appalachian Ins. Co. v Superior Ct.,* 162 Cal App 3d 427, 208 Cal Rptr 627).

In *Appalachian Ins. Co. v Superior Ct. (supra),* the California Court of Appeal, Second District, which had an identical provision before it as in the present case, took note that the service of suit clause was developed by Lloyd's of London many years before in response to its competitors' arguments that Lloyd's was not amenable to service of process in the United States and that as a result, potential customers should place their business with domestic companies. The court concluded that: "[T]he Service of Suit clause involved here pro-

vided no certainty, as it did not specify a particular forum. There is also no indication that the parties foresaw use of a forum bearing no relationship to the events" (162 Cal App 3d, *supra,* at 439, 208 Cal Rptr, *supra,* at 634).

In *International Ins. Co. v McDermott Inc. (supra,* at 94), the Fifth Circuit Court of Appeals was asked to address "a question regarding a clause common in insurance policies, commonly known as a 'Service of Suit' clause". That clause is identical to the one in question herein. In *McDermott,* two insurance companies commenced a declaratory judgment action on February 28, 1991 in a Federal court in Louisiana to determine their rights and liabilities with respect to certain insurance policies. Approximately three weeks later, the insured filed an action in a Texas State court and moved to dismiss the Federal action based upon the service of suit provision. The Fifth Circuit, in reversing the District Court which had held that the provision should be viewed as a forum selection clause, concluded that: "[T]he Service of Suit clause does not give the insured the right to prevent the insurer from bringing an action of its own, in a forum of the insurer's choosing, against the insured." *(Supra,* at 96.)

The Fifth Circuit also addressed the untenable results which could occur if service of suit provisions are read as mandatory forum selection clauses: "[T]he far-reaching construction of the Service of Suit clause advocated by McDermott leads to untenable results. * * * [T]he insured could effectively block an otherwise valid federal action simply by a later filing in state court. * * * McDermott could simply choose another forum, file suit, and have the insurer's action stayed or dismissed. McDermott would thus make the Service of Suit clause a convenient mechanism by which the insured could deprive the insurer of its right to seek a declaratory judgment or other redress from the courts." *(Supra,* at 96.)*

In *Price v Brown Group (supra,* at 200), the Appellate Division, Fourth Department, also addressing the identical

---

* The court also noted that any overlap, such as the same issues being litigated in two different courts, could be dealt with by reference to the doctrines of judicial economy, integrity of judgments and comity between Federal and State courts.

provision as the one in question, concluded that: "[U]nder *Rokeby-Johnson,* viz., any jurisdiction, no matter how remote, if selected by the insured, must hear and decide the dispute, even if the insurer had previously commenced an action in an appropriate jurisdiction. That drastic result should, if at all, only occur where the contractual provision clearly expresses that intent. Here, that intent is lacking." *(See also, Utica Mut. Ins. Co. v Bristol-Myers Squibb Co., supra,* at 1046.)

In *Orix Credit Alliance v Mid-South Materials Corp.* (816 F Supp 230, 231), the United States District Court for the Southern District of New York reviewed a provision in a guarantee which provided that: " 'the undersigned do[es] hereby agree to the venue and jurisdiction of any court in the State and County of New York regarding any matter arising hereunder.' " Although the foregoing provision is more specific than the provision before us, Judge Sweet held that the provision was a jurisdiction conferring clause which, while providing the plaintiff with a guaranteed forum, did not deprive it of the right to sue in another jurisdiction as long as personal jurisdiction could be had over the defendant. *(Accord, AVC Nederland v Atrium Inv. Partnership,* 740 F2d 148, 151, 155 [where the Second Circuit Court of Appeals, in reviewing a provision which stated, *inter alia,* that " '[a]ll and any disputes, differences or questions arising from the present Agreement shall be decided and determined by the competent court in Utrecht' " and that " '[t]he laws of the Netherlands shall apply to and govern this agreement,' " held that the clause "although providing a plaintiff with a guaranteed forum, does not deprive him of the right to sue in another having personal jurisdiction over the defendant."].)

In light of the foregoing case law, and after a reconsideration and reanalysis of the clear language contained in the subject provision, we now conclude that such provision should be construed as a permissive "service of suit" or "consent to jurisdiction" provision, and not a mandatory and exclusive forum selection clause.

To the extent that *Rokeby-Johnson (supra)* relies on *The Bremen v Zapata Off-Shore Co.* (407 US 1), we disagree with that analysis. In *Bremen,* the critical contractual provision stated that: " 'Any dispute arising *must be treated* before the

London Court of Justice.' " *(Supra,* at 2 [emphasis added].)* The parties in *Bremen* clearly agreed in the contract to a particular forum to resolve all contractual disputes. The United States Supreme Court in *Bremen* held that such a forum selection clause should control "absent a strong showing that it should be set aside" *(supra,* at 15), such as if the enforcement of such would be unreasonable, unjust, or that it could clearly be shown that it was invalid for reasons such as fraud or overreaching.

While the clause in *Bremen* specifically designates the London Court of Justice to be the exclusive forum, the provision in *Rokeby-Johnson,* which is identical to the clause herein, contains no such certainty and does not specify a particular forum for the resolution of any or all disputes. Since there is no language restricting jurisdiction to one particular venue, we conclude that there was no agreement between the parties to limit all disputes to one jurisdiction.

With the issue of *Rokeby-Johnson* aside, we find that the IAS Court properly concluded that Bristol-Myers has failed to meet its burden that New York is an inconvenient forum *(Islamic Republic v Pahlavi,* 62 NY2d 474, *cert denied* 469 US 1108; *Banco Ambrosiano v Artoc Bank & Trust,* 62 NY2d 65; *Neville v Anglo Am. Mgt. Corp.,* 191 AD2d 240). Bristol-Myers maintains its corporate headquarters as well as its central operations in New York, a great many of Bristol-Myers' insurers have their principle place of business in New York, and Bristol-Myers' insurance brokers, who negotiated and administered the coverage, are located in New York.

Accordingly, the order of the Supreme Court, New York County (Joan Lobis, J.), entered March 9, 1994, granting, *inter alia,* defendant-respondent Bristol-Myers' motion to the extent it sought a stay of the New York action pending determination of the earlier-commenced Texas action, unanimously reversed, on the law, without costs, the motion denied and the stay vacated. Order, same court and Justice, entered on or about August 17, 1994, granting plaintiffs' motion for reargument/renewal and adhering to its original determination, unanimously reversed, on the law, without costs, and the determination vacated in light of the foregoing.

Motions for leave to enlarge the record, strike portions of respondents' brief and for sanctions are denied.

SULLIVAN, J. P., ROSENBERGER and WILLIAMS, JJ., concur.

Order, Supreme Court, New York County, entered March 9, 1994, which, *inter alia,* granted defendant-respondent Bristol-Myers' motion to the extent it sought a stay of the New York action pending determination of an earlier-commenced Texas action, reversed, on the law, without costs, the motion denied and the stay vacated and, order, same court and Justice, entered on or about August 17, 1984, which granted plaintiffs' motion for reargument/renewal and adhered to its original determination, reversed, on the law, without costs, and the determination vacated. Motions for leave to enlarge the record, strike portions of respondents' brief and for sanctions are denied.