OPINION OF THE COURT
Memorandum.
Order entered February 22, 2007, insofar as appealed from, reversed without costs and the branch of defendants’ motion seeking to dismiss the complaint granted.
*3 Appeal from the above-stated portions of the order entered July 27, 2007 dismissed as academic.
Plaintiff is a Delaware corporation with an office in Jericho, New York, and is the assignee of the rights (but not the obligations) of NorVergence, Inc. under a 60-month equipment rental agreement (ERA) between NorVergence, a New Jersey corporation (which has since become bankrupt), as lessor (also referred to herein as rentor), and defendant New Concepts Realty, Inc. (NCR), a Colorado corporation, as lessee. Defendant Charles Blood, the president of NCR and a Colorado resident, individually guaranteed the ERA. Plaintiff brought this action in Supreme Court, Nassau County, to recover $13,687.48, the principal sum allegedly due under the ERA. Jurisdiction and venue were premised solely on a clause of the ERA, printed in six-point bold type, which provides:
“APPLICABLE LAW . . . This agreement shall be governed by, construed and enforced in accordance with the laws of the State in which Renter’s principal offices are located or, if this Lease is assigned by Rentor, the State in which the assignee’s principal offices are located, without regard to such State’s choice of law considerations and all legal actions relating to this Lease shall be venued exclusively in a state or federal court located within that State, such court to be chosen at Rentor or Renter’s assignee’s sole option. You hereby waive right to a trial by jury in any lawsuit in any way relating to this rental.”
Defendants moved for leave to interpose a late motion to dismiss and, upon the granting of leave, for dismissal of the complaint, alleging lack of personal jurisdiction and forum non conveniens. Defendants further contended that the forum selection clause of the ERA was invalid and unenforceable because it lacked specificity and had been obtained by fraud and overreaching. Additionally, defendants claimed that the same issues were being litigated in Colorado, in a class action for declaratory relief captioned New Horizons Elec., Inc. v IFC Credit Corp., in which the defendants in this litigation were among the plaintiffs, and the plaintiffs herein were among the defendants. (The Colorado litigation was subsequently dismissed, upon a finding by the Colorado Court of Appeals that the forum selection clause was valid under Colorado law [2008 WL 4597419, 2008 Colo App LEXIS 1855 (2008)].) They also argued that the ERA was unenforceable under various provisions of the Uniform *4 Commercial Code, Executive Law § 63 (12), CPLR 4544 and 16 CFR 433.2.
Defendants’ moving papers were supported, inter alia, by an attorney’s affirmation and the affidavit of defendant Charles Blood, as well as documentation of findings of the Florida Attorney General and the New York Attorney General, and the trustee in bankruptcy in the NorVergence bankruptcy case (Matter of Charles M. Forman, Chapter 7 Trustee of the Estate of NorVergence, Inc. v Thomas N. Salzano, Case No. 04-32079 [RG] [Bankr Ct, D NJ 2004]), all pertaining to what they found to be NorVergence’s unscrupulous and fraudulent tactics and the involvement of various assignees of NorVergence’s leases in the NorVergence scheme. Defendants also annexed to their moving papers a copy of the NorVergence Screening Manager Training Manual, which described in meticulous detail how NorVergence sales agents were to ensnare customers into signing NorVergence equipment lease agreements and guarantees, a copy of the proposed default judgment and order for permanent injunctive relief in Federal Trade Commn. v NorVergence, Inc. (2005 WL 3754864, 2005 US Dist LEXIS 40699 [D NJ 2005]), excerpts from the January 4, 2006 deposition of Mark Sibilia, an employee of another of NorVergence’s assignees taken in connection with a case brought in Texas under a different NorVergence lease, and copies of a number of decisions from other forums ruling against the enforceability of other NorVergence equipment leases. These documents, taken together, indicate that defendants NCR and Blood were among the numerous victims of a scheme whereunder NorVergence, targeting small businesses and not-for-profit corporations with high credit ratings and without in-house counsel or technology personnel, tricked those entities and their owners into signing equipment rental agreements and guarantees, which were presented to them for signature as part of NorVergence’s ostensibly nonbinding, no-risk “Cost Savings Proposal” for the installation of proprietary, technologically innovative telecommunications equipment and the provision of telecommunications services.
In their motion papers, defendants alleged that, in 2004, they were approached by a NorVergence salesman, who represented that NorVergence could save NCR up to 60% on its Internet, telephone and cellular telephone services by bundling those services into a single unlimited use package, including the leasing of unique telecommunications equipment, which was to be installed and serviced by NorVergence. On April 14, 2004 Blood, *5 acting as president of NCR and individually as the guarantor of NCR’s obligations, signed or initialed various documents including the subject ERA. Defendants were told that the documents were intended solely to reserve circuitry and hardware while defendants’ qualifications were being investigated. Defendants further alleged that they received oral assurances that the papers they were signing constituted only a nonbinding application and did not create any contractual obligations, when, in fact, taken together, they constituted a noneancelable agreement. Indeed, some of the documents were labeled “nonbinding.” The ostensibly unique equipment NorVergence agreed to provide — a “Matrix card” — was actually available for sale at a retail price of $395, whereas under the ERA defendants were obligated in the sum of $241 a month, plus tax, for 60 months — a price differential defendants argued was so unconscionable as to render the ERA unenforceable.
On May 7, 2004 Blood signed a one-page “Delivery and Acceptance Certificate,” acknowledging NCR’s receipt and acceptance of the equipment described in the ERA. This certificate contained the statement: “I have reviewed and I understand all of the terms and conditions of the Equipment Rental Agreement.” Although the equipment was delivered, it was never installed, and no services were ever provided. On May 10, 2004 NorVergence executed the ERA and, unbeknownst to defendants, assigned all of its rights, but none of its obligations, under the ERA to plaintiff — a privilege specifically accorded to the rentor, but not the lessee, under the ERA.
After defendants filed their motion to dismiss, the action was transferred to District Court, Nassau County, pursuant to CPLR 325 (d). In its decision, entered February 22, 2007, the District Court stated that, but for the forum selection clause of the ERA, it was undisputed that there would be no basis for the exercise of long-arm jurisdiction under CPLR 302, and jurisdiction would, moreover, be barred under principles of forum non conveniens, codified in CPLR 327. Thus, the District Court concluded that its jurisdiction depended on the enforceability of the forum selection clause. As to defendants’ arguments regarding the lack of specificity of the forum selection clause, the District Court found that it was governed by the decision in Sterling Natl. Bank v Eastern Shipping Worldwide, Inc. (35 AD3d 222 [2006]), in which the Appellate Division, First Department, upheld the enforceability of a similar contractual forum selection provision in another assigned NorVergence rental *6 agreement. The District Court rejected defendants’ argument that the clause nevertheless should not be enforced and denied defendants’ motion insofar as it sought dismissal of the complaint, finding defendants’ claims to be conclusory, and noting that litigation would not be significantly more onerous for defendants in New York than in New Jersey, the state where plaintiffs assignor NorVergence, was incorporated.
Defendants moved for leave to renew and reargue their motion to dismiss. The motion to renew was based in part upon the affidavits of Ron Zirkin, Don Weibel and David Silberman, which had been prepared in connection with litigation involving other NorVergence leases. As to these affidavits, all of which predated defendants’ motion to dismiss, although they were “newly obtained” by defendants’ attorneys, the District Court concluded that defendants had not proffered a reasonable excuse for their failure to obtain and submit the affidavits previously (see CPLR 2221 [e] [3]).
Defendants also proffered the January 31, 2007 affidavit of David Rodriguez, who had worked as a screening manager for NorVergence and who described in detail the methodology prescribed by NorVergence and followed by its sales personnel (termed “screening managers”) for obtaining signatures on equipment lease agreements and related papers, and for deceiving NorVergence customers into believing that they were sign- ' ing nonbinding applications rather than binding agreements. The District Court ruled that although this affidavit postdated defendants’ motion to dismiss, the facts contained therein were merely cumulative of the material originally submitted by defendants, and therefore denied the branch of defendants’ motion seeking leave to renew.
The District Court granted the branch of defendants’ motion seeking leave to reargue, but, rejecting defendants’ claims that the ERA was a “consumer lease” within the meaning of the Uniform Commercial Code, adhered to its original determination denying defendants’ motion to dismiss. Defendants appeal from so much of the order entered February 22, 2007 as denied their motion to dismiss and from the order entered July 22, 2007 insofar as it denied the branch of their motion seeking leave to renew, and, insofar as, upon reargument, it adhered to the prior decision of February 22, 2007.
New York follows the general rule that
“parties to a contract may freely select a forum which will resolve any disputes over the interpreta-
*7 tion or performance of the contract. Such clauses are prima facie valid and enforceable unless shown by the resisting party to be unreasonable. Forum selection clauses are enforced because they provide certainty and predictability in the resolution of disputes, particularly those involving international business agreements” (Brooke Group v JCH Syndicate 488, 87 NY2d 530, 534 [1996] [citations omitted]).
The burden is on the party attacking the clause to demonstrate
“that enforcement would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching, such that a trial in the contractual forum would be so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court” (British W. Indies Guar. Trust Co. v Banque Internationale A Luxembourg, 172 AD2d 234 [1991]).
The “severability concept” of contract construction (see Matter of Weinrott [Carp], 32 NY2d 190, 198 [1973]) has been extended to govern forum selection clauses, so that where they are contested on the grounds of fraud and overreaching, the fraud and overreaching must be shown with respect to the forum selection clause itself (see Sterling Natl. Bank, 35 AD3d 222 [2006]; British W. Indies Guar. Trust Co., 172 AD2d 234 [1991]).
However, in DeSola Group v Coors Brewing Co. (199 AD2d 141, 141-142 [1993]), while concluding that a forum selection clause was inapplicable because the complaint did not pertain to the agreement containing said clause, the Court remarked:
“Even assuming the Agreement is applicable, the forum selection clause contained therein is unenforceable since the record is replete with allegations indicating that the entire Agreement was permeated with fraud . . . Since plaintiffs allegations of fraud pervading the entire Agreement would render the entire Agreement void, the forum selection clause contained therein is unenforceable (Telford v Metropolitan Life Ins. Co., 223 App Div 175, affd 250 NY 528). Contrary to the IAS Court’s finding that the forum selection clause was valid since plaintiff did not allege that the clause itself was obtained by fraud (see, Rokeby-Johnson v Kentucky Agric. Energy Corp., 108 AD2d 336), where a party *8 alleges that a contract is void ab initio, the doctrine of separable contracts is inapplicable (see Matter of Weinrott [Carp], 32 NY2d 190).”
We are satisfied on the record before us that the contract upon which plaintiff bases its claim is similarly vulnerable, and is inadequate to support jurisdiction over these Colorado defendants in a New York court.
We note that the District Court considered the Appellate Division’s opinion in Sterling Natl. Bank (35 AD3d 222 [2006]) to be controlling. In that decision, construing another NorVergence equipment rental agreement, the Court specified that the defendant corporation was “a sophisticated business entity,” {id. at 223) noted that defendants had “failed to advance any grounds” {id. at 222) upon which the Court might disregard the forum designation clause contained in the lease agreement, and had not alleged any fraud or overreaching on the part of the assignee. Here, by contrast, the record shows that defendant corporation is a small, privately held business with gross revenues of between $150,000 and $200,000 and three employees. Moreover, defendants made a substantial showing, which was not contradicted by plaintiff, that they were tricked, by means of NorVergence’s intricately developed scheme, into signing what was represented to be a nonbinding agreement, which, in reality, was an unconscionably one-sided contract from which they derived no benefits. We note that although plaintiff stated in conclusory fashion that it purchased the challenged contract “for value, in good faith, and without notice of any defenses or claims,” plaintiff offered no answer to defendants’ assertion that, based on earlier defaults under other NorVergence leases that had been assigned to plaintiff, plaintiff should have known at the time it acquired thé lease at issue in this action that the means by which the lease had been procured were of dubious integrity.
Consequently, we conclude that defendants met their burden of demonstrating that the ERA was so permeated with fraud as to render the contract as a whole, including the forum selection clause contained therein, void and unenforceable. As only a contractual basis was alleged for personal jurisdiction over defendants, the District Court’s order of February 22, 2007, insofar as appealed from, is reversed and the branch of defendants’ motion seeking to dismiss the complaint is granted. The appeal from so much of the order entered July 27, 2007 as denied defendants’ motion for leave to renew and as, upon *9 granting leave to reargue, adhered to the prior decision, is dismissed as academic (see One Beacon Ins. Co. v French Inst. Alliance Francais NYC, 50 AD3d 388, 389 [2008]).
In view of the foregoing, we do not reach the remainder of defendants’ contentions.
Rudolph, EJ., Molía and Nicolai, JJ., concur.